KENNETH C. BRUNO *v.* CIVIL SERVICE COMMISSION OF THE CITY OF BRIDGEPORT ET AL.

BOGDANSKI, PETERS, HEALEY, ARMENTANO and WRIGHT, Js.

Argued February 5—decision released May 19, 1981

*Gregory P. Lynch,* with whom, on the brief, were *Paul V. McNamara* and *John L. Hardiman,* law student intern, for the appellant (plaintiff).

*Andrew D. Cretella,* for the appellee (defendant Leonard L. Crone).

*Thomas W. Bucci,* assistant city attorney, on the brief for the appellee (named defendant).

WRIGHT, J. This case involves the legality of rule II (3) of the Bridgeport civil service commission's rules which requires applicants for employment in the classified service of the city of Bridgeport to have maintained bona fide residence in the city of Bridgeport for not less than one year immediately preceding the date of examination.[1]

By notice dated September 7, 1976, the Bridgeport civil service commission scheduled an open, competitive examination for the position of recreation superintendent of the city of Bridgeport. Pursuant to such notice the plaintiff, Kenneth C. Bruno,

[1] Rule II (3) of the rules of the civil service commission of the city of Bridgeport provides: "No person shall be admitted to an examination for any class of positions in the classified service who has not been a bona fide resident of the City of Bridgeport for at least twelve consecutive months immediately prior to the date of the examination provided that such requirement of residence may be suspended by the commission as to any class or classes of position requiring highly professional scientific or technical qualification, or in case where through low compensation for services such a requirement is disadvantageous to the public interest, but all such cases with reasons therefore, shall be reported in the annual report of the commission to the mayor."

a resident of Stratford, made application for the position of recreation superintendent. He was subsequently notified by the city's personnel director that his application was disapproved due to his failure to meet the residency requirements.

Thereupon, in accordance with § 10 of the civil service provisions of the Bridgeport city charter, the plaintiff appealed the personnel director's ruling to the full civil service commission. The civil service commission considered the plaintiff's appeal and by letter dated November 4, 1976, notified the plaintiff that it had voted to allow him to take the examination for recreation superintendent "without prejudice to the merits of the residency question."

The plaintiff, who had been employed by the city of Bridgeport for eight years as a recreation supervisor, achieved the highest score among all persons taking the examination and was placed number one on the employment list for the position of recreation superintendent. The defendant Leonard L. Crone, who had maintained a bona fide residence in Bridgeport for more than one year prior to the examination, was placed number two on the employment list for the position. This action for injunctive and declaratory relief ensued.

The trial court concluded that: (1) the plaintiff was not a qualified applicant to take the examination for recreation superintendent; (2) the civil service commission did not have the authority to disregard rule II (3) of the civil service commission; (3) the defendant Crone should be elevated to the number one position on the list of applicants for the position of recreation superintendent; and

(4) the plaintiff's action in seeking to avoid the disqualifying effect of rule II (3) foreclosed him from attacking the constitutionality of the rule.

With respect to the first conclusion, the parties do not seriously dispute that Bruno does not meet the one-year residency requirement. Concerning the second conclusion, we agree with the trial court. It correctly concluded that the civil service commission could not and did not waive or suspend the residency requirement except as expressly provided by the rule itself. See *Walker* v. *Jankura,* 162 Conn. 482, 489, 294 A.2d 536 (1972). In our opinion the question that is dispositive of this appeal is: May the plaintiff attack the constitutionality of rule II (3) and, if so, is the record before us sufficiently complete to determine whether the rule is constitutionally defective?

We cannot subscribe to the trial court's determination that the plaintiff could not challenge the constitutionality of the residency rule. Whatever may be the merits, in other contexts, of the rule that one who seeks the relief provided by an ordinance or statute cannot later in the same proceeding challenge its constitutionality; see, e.g., *Florentine* v. *Darien,* 142 Conn. 415, 428, 115 A.2d 328 (1955); such a rule is inapposite here. The civil service commission rule at issue provides no mechanism for seeking relief from its operation. It only provides for a suspension in two well-defined situations: highly technical positions and low compensation positions.[2] Neither situation has been claimed by the plaintiff in the record before us.

The plaintiff did not seek from the commission substantive relief from the residency rule. He

---

[2] See footnote 1, supra.

asked only to be allowed to take the examination for recreation superintendent when it was administered pending a final resolution of the residency question. That the commission so understood his request is made clear by its response allowing him to take the test "without prejudice to the merits of the residency question." Because Bruno's action in this respect did not constitute "seeking relief," under the *Florentine* rule, he is not foreclosed from attacking the constitutionality of the rule in this action.

As a result of the trial court's erroneous resolution of this issue, it never had the opportunity to rule on the constitutionality of the residency requirement. Several recent United States Supreme Court decisions have held that durational residency requirements, which mandate residence within a state or municipality for a period of time before becoming eligible for benefits, not only violate the equal protection doctrine, but also impinge upon the basic constitutional right to travel freely throughout the country. In this connection, see *Memorial Hospital* v. *Maricopa County,* 415 U.S. 250, 94 S. Ct. 1076, 39 L. Ed. 2d 306 (1974) (non-emergency medical treatment); *Dunn* v. *Blumstein,* 405 U.S. 330, 92 S. Ct. 995, 31 L. Ed. 2d 274 (1972) (voting); *Shapiro* v. *Thompson,* 394 U.S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (1969) (one-year wait for welfare benefits).

Following these decisions, courts throughout the country have invalidated durational residency laws which were conditions precedent for obtaining benefits from a municipality. See *King* v. *New Rochelle Municipal Housing Authority,* 442 F.2d 646 (2d Cir.), cert. denied, 404 U.S. 863, 92 S. Ct. 113, 30

L. Ed. 2d 107 (1971) (five-year requirement for public housing); *Cole* v. *Housing Authority of City of Newport*, 435 F.2d 807 (1st Cir. 1970) (two-year requirement for public housing); *Mogk* v. *City of Detroit*, 335 F. Sup. 698 (E.D. Mich. 1971) (three-year requirement for membership on city commission); *Cooperrider* v. *San Francisco Civil Service Commission*, 97 Cal. App. 3d 495, 158 Cal. Rptr. 801 (1979) (city ordinance requiring one year of residency before one could apply for a city job). Other courts, however, have upheld durational residency provisions. See, e.g., *Milton* v. *Civil Service Commission*, 365 Mass. 368, 312 N.E.2d 188 (1974) (one-year residency creates preference in obtaining employment as a local police officer). These and other cases are discussed in comment, "Durational Residence Requirements for Public Employment," 67 Cal. L. Rev. 386 (1979).

The record before us, however, is not adequate to allow a final determination of the residency rule's constitutionality. In particular, with respect to the equal protection claims argued by the parties, the present record is deficient because it contains no evidence or factual determinations concerning the governmental interests advanced by the rule, the degree to which the means employed by the rule are tailored to achieve its legislative objectives, or the extent to which various rights of the plaintiff[3] are affected by the rule. A final ruling on the constitu-

---

[3] From the briefs, it appears that the plaintiff's equal protection argument relies primarily on the durational component of the rule. Because Bruno apparently does not live in Bridgeport, the manner in which the durational component, as opposed to the pure "residency requirement," operates to deny him the equal protection of the law is not clear. Cf. *McCarthy* v. *Philadelphia Civil Service Commission*, 424 U.S. 645, 646 n.5, 96 S. Ct. 1154, 47 L. Ed. 2d 366 (1976).

tionality of the residency requirement must await the development, at the trial level, of a sufficiently complete record.

There is error, the judgment is set aside and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.