ROBERT HELBIG v. ZONING COMMISSION OF THE
NOANK FIRE DISTRICT

ROBERT HELBIG v. ZONING BOARD OF APPEALS FOR THE
NOANK FIRE DISTRICT

BOGDANSKI, C. J., HEALEY, PARSKEY, ARMENTANO and WRIGHT, Js.

Argued April 10—decision released August 18, 1981

*Emmet L. Cosgrove,* with whom, on the brief, was *Suzanne D. Kitchings,* for the appellants (defendants).

*Frank N. Eppinger,* with whom, on the brief, was *Peter N. Bartinik,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. This case presents two appeals by Robert Helbig from zoning authorities of the fire district of Noank. The first appeal, institu-

ted in April, 1976[1] (the April appeal), arose out of the decision of the zoning commission of the Noank fire district that Helbig's use of his Bayside Avenue property as a commercial boatyard violated the zoning ordinance of the Noank fire district, and the commission's consequent order to its zoning enforcement officer to undertake action seeking a warrant for Helbig's arrest for violating the zoning regulations. This order was issued after the commission, following a hearing, rejected Helbig's claim, inter alia, that his use was a valid nonconforming use. The April appeal, in challenging the commission's action as illegal, arbitrary and in abuse of its discretion, also attacked the zoning ordinance.[2]

Thereafter, on April 19, 1976, Helbig appealed to the zoning board of appeals from the zoning enforcement officer's decision that a nonconforming use did not exist on his property. On May 26, 1976, the zoning board of appeals held a public hearing, at which the plaintiff appeared and presented his case. Due to a recorder malfunction, a rehearing was scheduled on July 17, 1976. The plaintiff appeared and presented additional evidence in support of his claim of a "valid, pre-existing, continuous non-conforming use." On July 30, 1976, the zoning board of appeals denied his appeal and affirmed the decision of the zoning enforcement officer and of the commission. On August 17, 1976, Helbig appealed from the decision of the zoning board of appeals (the August appeal). Both the April and August appeals were presented at the same time for determination by the Superior Court, which consolidated the two appeals. The Superior

[1] The record indicates that this appeal was filed on April 9, 1976.
[2] This appeal also made other attacks on the action of the commission and its zoning enforcement officer.

Court sustained the April appeal and determined that the August appeal was moot because of its decision on the April appeal.[3]

In deciding the April appeal, the Superior Court permitted the plaintiff to attack the constitutionality of § 13.7 of the zoning ordinance of the Noank fire district, which section pertains to the establishment of nonconforming uses.[4] The court concluded that § 13.7 was "invalid due to its total lack of evidentiary standards and due to insufficient guidelines for the commission and the affected property owners." In reaching this conclusion, the court stated that "[t]he language of Section 13.7 which requires 'sufficient proof as the Zoning Commission may require' to prove . . . the existence of a nonconforming use must necessarily result in unequal and arbitrary application of the section to affected property owners."[5] On this appeal, the defendants[6] claim that the trial court erred: (1) in concluding that the plaintiff "could attack the constitutionality of the subject zoning ordinance in the same action in which he sought the benefits of the ordinance" and (2) in "declaring that the subject zoning ordinance section requiring registration of pre-existing

[3] The defendants filed a petition for certification in each appeal, and we granted both petitions.

[4] For full text of § 13.7 of the zoning ordinance of the Noank fire district see text, infra.

[5] In its memorandum of decision on the April appeal, the trial court observed that it "has examined the zoning regulations of many towns with reference to the establishment of non-conforming uses and has not found any comparable to Section 13.7 of the Noank Fire District." In this opinion, we confine our determination of the validity of the Noank fire district regulation to § 13.7 of the Noank ordinance, without reference to regulations of any other town or district.

[6] The defendant zoning commission and the defendant zoning board of appeals filed a "consolidated" brief and reply brief.

nonconforming uses lacks sufficient evidentiary standards to guide the zoning commission and affected property owners."

The defendants state their claim in the August appeal as follows: "Did the trial court err in declaring the plaintiff's appeal from the action of the zoning board of appeals moot because of its decision in the plaintiff's zoning commission appeal when the defendant board of appeals not only ruled on the zoning commission's action based on the ordinance later held to be invalid, but also ruled on a separate issue unrelated to that ordinance—i.e., the zoning enforcement officer's prior issuance of a violation notice to the plaintiff."

We take up first the defendants' claims on the April appeal. Referring to the right of a party to raise the issue of the constitutionality of an ordinance or statute, we have held that a party cannot seek the relief provided in an ordinance or statute and later in the same proceeding raise the question of its constitutionality. See *Society for Savings* v. *Chestnut Estates, Inc.,* 176 Conn. 563, 567, 409 A.2d 1020 (1979); *Holley* v. *Sutherland,* 110 Conn. 80, 85, 147 A. 300 (1929); cf. *Bruno* v. *Civil Service Commission,* 184 Conn. 246, 249, 440 A.2d 155 (1981). This is the rule extant in our zoning cases. See, e.g., *J & M Realty Co.* v. *Norwalk,* 156 Conn. 185, 191, 239 A.2d 534 (1968); *St. John's Roman Catholic Church Corporation* v. *Darien,* 149 Conn. 712, 717–18, 184 A.2d 42 (1962); *Florentine* v. *Darien,* 142 Conn. 415, 428, 115 A.2d 328 (1955); *Strain* v. *Zoning Board of Appeals,* 137 Conn. 36, 38–39, 74 A.2d 462 (1950), and cases cited therein. Mr. Justice Brandeis, concurring in *Ashwander* v. *Tennessee Valley Authority,* 297 U.S. 288, 348, 56

S. Ct. 466, 80 L. Ed. 688 (1936), formulated the rule as follows: "The Court will not pass upon the constitutionality of a statute at the instance of one who has availed himself of its benefits." See *Fahey* v. *Mallonee,* 332 U.S. 245, 255, 67 S. Ct. 1552, 91 L. Ed. 2030 (1947); *United Fuel Gas Co.* v. *Railroad Commission,* 278 U.S. 300, 307–308, 49 S. Ct. 150, 73 L. Ed. 390 (1929).

There are, however, exceptions to such a rule at both the federal and state level. Where compliance with the statute under attack is under compulsion, compliance can hardly be deemed voluntary, and one will not be estopped to challenge the statute. See *Hialeah Race Course, Inc.* v. *Gulfstream Park Racing Assn., Inc.,* 245 So. 2d 625, 629 (Fla. 1971); *Donoho* v. *O'Connell's, Inc.,* 18 Ill. 2d 432, 435, 164 N.E.2d 52 (1960); *People* v. *Arthur Morgan Trucking Co.,* 16 Ill. 2d 313, 317, 157 N.E.2d 41 (1959); *Begin* v. *Inhabitants of the Town of Sabattus,* 409 A.2d 1269, 1272 (Me. 1979); 16 Am. Jur. 2d, Constitutional Law § 211; 16 C.J.S., Constitutional Law § 89. Stated another way, estoppel will not prevent a challenge to the validity of a statute where there is compliance with a statute that requires a duty mandatory in form, accompanied by penalties for failure to obey its provisions, or which is otherwise coercive; in such cases, the element of voluntary action (or embracing the benefits of such a statute) essential to waiver or estoppel is absent. 16 Am. Jur. 2d, Constitutional Law § 211. The unique circumstances of the April appeal with the plaintiff looking directly at a clear and present threat of criminal liability for a visible use of his property which he seriously urged predated zoning, leads us to conclude that he may properly mount his constitutional attack. This matter hardly falls within

the aphorism "[u]ndoubtedly, men may not take advantage of a law when it suits them, and then attack it when it does not." See *Owens* v. *Corporation Commission of State of Oklahoma,* 41 F.2d 799, 803 (W.D. Okla. 1930), and cases cited therein.

Moreover, we note that our estoppel doctrine does not preclude a party from attacking the constitutionality of a statute or ordinance in an independent proceeding. *St. John's Roman Catholic Church Corporation* v. *Darien,* supra, 718; *Florentine* v. *Darien,* supra, 430; *Strain* v. *Zoning Board of Appeals,* supra, 40. The record in this case indicates that the plaintiff has filed an independent declaratory judgment action concerning the constitutionality of § 13.7.[7] No action has been taken on this case pending a resolution of the present appeals. We agree with the claim made by the defendants in their reply brief that "these appeals present a situation where further litigation could be avoided by deciding the issue of the constitutionality of § 13.7." Thus, we reach that issue.

Certain circumstances demonstrating the posture of these matters before and during the activities of the zoning commission and the zoning board of appeals may be appropriately set out at this point. The plaintiff maintains that a predecessor in title had purchased the property in question in 1954 and had established a boatyard thereon before the adoption of zoning by the Noank fire district on July 17, 1956. With the passage of zoning in 1956, the premises lay partly in a residential zone and partly in an industrial zone. The plaintiff claims that because of this zoning, the portion used as a boatyard was

[7] *Robert Helbig* v. *Noank Fire District,* No. 53319, filed in the Superior Court, Judicial District of New London, on October 12, 1978.

in a residential zone, and thus became a nonconforming use, while the portion of the premises in the new industrial zone became a conforming use.

Some time later, in 1967, the industrial zone, within which a portion of the premises was located, was eliminated and zoned residential. The plaintiff maintains that the entire use of the property thus became a nonconforming use. On May 1, 1972, the plaintiff entered into a lease-option agreement to purchase this property from the Watrous estate, and he subsequently purchased it on March 3, 1976.[8]

On June 22, 1974, the zoning ordinance of the Noank fire district was again amended in several respects: (1) the subject premises were designated as "village residential"; (2) § 13.7, concerning the establishment of nonconforming uses, was added to the zoning ordinance; and (3) § 13.2.2 was also added to the regulations.[9]

---

[8] The plaintiff claims that he purchased the property relying on the history and use of the property, and the knowledge that (1) the property had been used as a marina before the passage of a zoning ordinance by the Noank fire district, (2) the use as a marina had been continuous since that time, and (3) at the time of its purchase by the plaintiff, the property was being used as a marina. The plaintiff further asserts that his sole purpose for purchasing the property was to use the property as a marina.

[9] Section 13.2.2 of the regulations provides: "No nonconformity shall be deemed to have existed on the date this Zoning Ordinance or any amendment thereto became effective, unless:

"a. The nonconformity has been in existence on a continuous basis and to the fullest possible extent.

"b. If such nonconformity is a use, such use had not been abandoned within the meaning of Section 13.6.2.

"Provided that, nothing in this ordinance shall be deemed to require a change in the plans, construction or designated use of any structure on which actual construction was lawfully begun in good faith prior to such date, provided such construction is diligently pursued to completion within two years following such date. Actual construction is hereby defined to include the placing of construction materials so they are in a permanent position and fastened to the earth in a permanent manner."

After several requests for information regarding the claimed preexisting nonconforming use of the parcel as a commercial boatyard, on November 27, 1974, the zoning enforcement officer sent notices of violation to the plaintiff and the Watrous estate. The zoning enforcement officer stayed action on his violation notices upon the agreement of the plaintiff to apply for recognition of a nonconforming use under § 13.7 of the zoning ordinance.

On December 19, 1974, the plaintiff, pursuant to § 13.7, submitted a site plan showing the property and boatyard at Bayside Avenue.[10] On March 17, 1975, he was notified that the commission was still reviewing his request for recognition of a nonconforming use for the boatyard. On May 28, 1975, the zoning enforcement officer notified him that, in the opinion of the commission, a preexisting nonconforming use did not exist at the property and that, unless tax records were presented indicating the operation of a boatyard prior to 1956, the commission would deny his "application for a nonconforming use."

On June 19, 1975, the zoning enforcement officer informed the plaintiff that the commission had decided that a preexisting nonconforming use did not exist on the property and that he was in violation of the zoning ordinance of the fire district. At that time, he was also notified that unless all boats and the travel trailer lift were removed from the property within ten days, the matter would be turned over to the prosecutor's office. On July 21,

---

[10] The plaintiff had previously submitted to the chairman of the zoning commission of the Noank fire district three affidavits and a lease in support of his claim that the boatyard/marina was a valid, preexisting and continuous nonconforming use since before the inception of zoning in 1956.

1975, the zoning enforcement officer requested the prosecutor to issue a warrant for the plaintiff's arrest. Thereafter, however, on December 1, 1975, the zoning enforcement officer informed the plaintiff that the commission had decided to offer him an opportunity to present additional evidence concerning the preexistence of a nonconforming use of his property.

On January 7, 1976, the commission held a special meeting to hear evidence on the history of the use of the plaintiff's property on Bayside Avenue. At that hearing, the plaintiff presented evidence[11] in support of his claim. In addition, former owners of the property, a lessee of the property, the plaintiff and other citizens of Noank spoke on the history and use of the property.[12] On March 23, 1976, the commission voted to reaffirm its previous stand that there was insufficient evidence to prove a preexisting, continuous, nonconforming use on the plaintiff's property.

On April 19, 1976, the plaintiff appealed to the zoning board of appeals of the Noank fire district from the decision of the zoning enforcement officer that no nonconforming use existed on his property. Two public hearings were held on this appeal, and

---

[11] This evidence included the following:

"(1) List of 28 boats in storage at the property in May, 1972.

(2) Affidavit of Clyde T. Annis of Groton, Connecticut, dated January 23 [sic], 1976.

(3) 10 photographs of boats at property.

(4) Check for payment of unincorporated business tax.

(5) Receipt for storage of Clyde Annis' boat.

(6) List of receipts for storage of boats.

(7) Aerial photograph of shoreline in vicinity of boatyard.

(8) Diagram of zone boundaries affecting the property since 1956."

[12] In addition, the zoning ordinance dated February 28, 1951, which was adopted on July 17, 1956, was also introduced.

the plaintiff appeared and presented additional evidence in support of his claim.[13] On July 30, 1976, the zoning board of appeals denied the plaintiff's appeal and affirmed the decision of the zoning enforcement officer.[14]

We turn now to the plaintiff's attack on § 13.7 of the regulations. We initially note that zoning legislation has been upheld as a legitimate subject for the exercise of police power provided it has a reasonable relation to the public health, safety and welfare, and operates in a manner which is not arbitrary, destructive or confiscatory. See *Bartlett* v. *Zoning Commission,* 161 Conn. 24, 30–31, 282 A.2d 907 (1971); *Teuscher* v. *Zoning Board of Appeals,* 154 Conn. 650, 658–59, 228 A.2d 518 (1967); *State* v. *Hillman,* 110 Conn. 92, 100, 147 A. 294 (1929). Whether specific regulations meet the test of a constitutional exercise of the police power must be determined in the light of the circumstances shown to exist in a particular case. See *Bartlett* v. *Zoning Commission,* supra, 31. "When a question of con-

[13] On May 26, 1976, the zoning board of appeals held a public hearing, at which the plaintiff appeared and presented his case. After that hearing, he was informed that the recorder had malfunctioned, and a rehearing was held on July 17, 1976. At the latter hearing, the plaintiff presented the following additional evidence:

"(1) Copies of receipts for boat storage and work.

(2) Copy of Application of Curtis Watrous to the Probate Court of Groton for permission to lease property and Order, dated October 20, 1970.

(3) Watrous lease to Broncato, recorded June 1, 1970, Groton Land Records.

(4) Tax Delinquency Notice to G. Broncato dated May 17, 1968.

(5) List of Boats stored as of May, 1972.

(6) Oral statements by Plaintiff and others."

Two members of the zoning commission spoke against the plaintiff's position.

[14] The plaintiff's appeal from this decision of the zoning board of appeals became what we refer to as the August appeal.

stitutionality is raised, the court presumes validity and sustains the legislation unless it clearly violates constitutional principles." *Teuscher* v. *Zoning Board of Appeals,* supra, 659, quoting *State* v. *Gordon,* 143 Conn. 698, 703, 125 A.2d 477 (1956); see *New Milford* v. *SCA Services of Connecticut, Inc.,* 174 Conn. 146, 148, 384 A.2d 337 (1977); *Edwards* v. *Hartford,* 145 Conn. 141, 145, 139 A.2d 599 (1958). The plaintiff has the burden of overcoming this presumption; *Teuscher* v. *Zoning Board of Appeals,* supra; *Murphy, Inc.* v. *Westport,* 131 Conn. 292, 302–303, 40 A.2d 177 (1944); and that burden is not a "light one." *DeForest & Hotchkiss Co.* v. *Planning & Zoning Commission,* 152 Conn. 262, 271, 205 A.2d 774 (1964).

The commission points out that the registration and regulation of "legal" nonconforming uses is proper within the authority of General Statutes § 8-2 and Special Act No. 34 of the 1947 General Assembly.[15]  See 6 Rohan, Zoning and Land Use Controls § 41.01[2].  Section 8-2 authorizes "the zoning commission of each city, town or borough . . . to regulate within the limits of any such municipality," many facets of the use of land.  The section, however, also provides in relevant part that: "Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of adoption of such regulations."

[15] Special Act No. 34 of the 1947 General Assembly entitled "An Act Granting Zoning Authority to the Noank Fire District" provided: "The rights, powers and obligations with respect to zoning, conferred upon cities, towns, or boroughs by chapter twenty-nine of the general statutes, as amended, are added to the powers and purposes of the Noank Fire District. The three members of the executive committee of said district and two qualified electors of said district elected for said purpose at the annual meeting of said district shall be the zoning authority."

We have observed that " '[t]he accepted policy of zoning . . . is to prevent the extension of nonconforming uses' "; *Hyatt* v. *Zoning Board of Appeals,* 163 Conn. 379, 384, 311 A.2d 77 (1972); see *Baccante* v. *Zoning Board of Appeals,* 153 Conn. 44, 47, 212 A.2d 411 (1965); *DeForest & Hotchkiss Co.* v. *Planning & Zoning Commission,* supra, 268; and that it is the "indisputable goal of zoning to reduce nonconforming to conforming uses with all the speed justice will tolerate." *Blum* v. *Lisbon Leasing Corporation,* 173 Conn. 175, 181, 377 A.2d 280 (1977); see *Gunther* v. *Board of Zoning Appeals,* 136 Conn. 303, 309, 71 A.2d 91 (1949). Nevertheless, the rule concerning the continuance of a nonconforming use protects the "right" of a user to continue the same use of the property as it existed before the date of the adoption of the zoning regulations. *Beckish* v. *Planning & Zoning Commission,* 162 Conn. 11, 16, 291 A.2d 208 (1971); *Abbadessa* v. *Board of Zoning Appeals,* 134 Conn. 28, 34, 54 A.2d 675 (1947).

We appreciate, however, that unless these uses are identified and their status determined, zoning enforcement concerning them is almost impossible and often difficult. See 3 Anderson, American Law of Zoning (2d Ed.) § 17.04. Such regulation is necessary for efficient zoning administration. Regulations such as § 13.7 of the Noank fire district look to the cataloguing, determination and supervision of nonconforming uses in a town or district that must deal with such uses claimed to predate zoning. If a regulation such as § 13.7 does not meet constitutional standards, however, it must be stricken.

The defendants specifically claim that the trial court erred in declaring that § 13.7 lacked "sufficient evidentiary standards to guide the zoning commis-

sion and affected property owners." Maintaining that the trial court did not accord the presumption of constitutionality or utilize established rules of statutory construction in making its determination, the defendants argue that the court "focused solely upon the language of § 13.7 in reaching its decision and did not consider or review §§ 13.1 through 13.6 of the Zoning Ordinance." "These sections," maintain the defendants, "state a legislative policy and standards which give guidance to the Zoning Commission in implementing the strategy of the Noank Fire District for dealing with nonconforming uses."[16] The defendants argue that the requirement of a site plan under § 13.7, along with "sufficient proof as the Zoning Commission may require" to prove the existence of a nonconforming use "such as tax receipts or sales tax permits . . ." together with other portions of § 13, "give(s) the zoning authority definite guidelines as to the minimum evidence which must be requested but allows sufficient flexibility for the zoning authority to consider the diverse types of proof which might be available in different factual situations." We cannot accept these claims.

There is no question that criteria contained in a zoning commission's regulations must be as reasonably precise as the subject matter requires and as reasonably adequate and sufficient to guide the com-

[16] In their brief, the defendants argue the specific applicability of §§ 13.1 and 13.2 saying at one point that the court did not "look elsewhere in the ordinance for the guidance offered by other sections, specifically §§ 13.1 and 13.2." The defendants claim that "[t]he criteria specified in §§ 13.1 and 13.2 articulate a legislative policy and guide the Zoning Commission as to what facts it must find to determine whether the applicant's asserted pre-existing nonconforming use was full, continuous and unabandoned for the period in question."

mission and to enable those affected to know their rights and obligations. *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 680, 236 A.2d 917 (1967); see *American Power & Light Co.* v. *S.E.C.,* 329 U.S. 90, 105, 67 S. Ct. 133, 91 L. Ed. 103 (1946). Although "[i]t is unrealistic to demand detailed standards which are impracticable or impossible"; *Forest Construction Co.* v. *Planning & Zoning Commission,* supra, 679; "[a] 'statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law' .... And this is no less true of a municipal ordinance or regulation." *O'Connell* v. *Brockton Board of Appeals,* 344 Mass. 208, 212, 181 N.E.2d 800 (1962), quoting *Commonwealth* v. *Carpenter,* 325 Mass. 519, 521, 91 N.E.2d 666 (1950). We have explicitly said: "[E]very owner of property located in a town which has adopted zoning is entitled to be able to ascertain, with reasonable certainty, what uses he may legally make of any portion of his property." *Lebanon* v. *Woods,* 153 Conn. 182, 191, 215 A.2d 112 (1965); see *Forest Construction Co.* v. *Planning & Zoning Commission,* supra. This requirement of standards is a fundamental aspect of constitutional law. *Powers* v. *Common Council,* 154 Conn. 156, 159, 222 A.2d 337 (1966); *Eastern Oil Refining Co.* v. *Court of Burgesses,* 130 Conn. 606, 611, 36 A.2d 586 (1944).

We turn, then, to the challenged section, § 13.7, which involves the procedure concerning the establishment of nonconforming uses. Section 13.7 in its entirety, provides as follows: "13.7 ESTABLISHMENT OF NONCONFORMING USE. The owners of all nonconforming uses existing as of June 22, 1974, must sub-

mit a plan indicating sufficient data to indicate the extent of such nonconforming use as of the date indicated above. Such plan shall be prepared by either an engineer, architect, land surveyor or others acceptable to the Commission and indicate sufficient information as required in Section 11.4 to fully define the existing nonconformity. This plan along with sufficient proof as the Zoning Commission may require to prove the existence of a nonconforming use such as tax receipts or sales tax permits shall be submitted to the Zoning Commission no later than six months after the date indicated above. Upon approval of the Zoning Commission that the nonconforming use is in fact a preexisting nonconforming use, a Certificate of Occupancy shall be issued indicating the location, nature and extent of the nonconforming use and such other details as may be necessary for the issuance of the Certificate of Occupancy, and the plan shall be recorded by the owner in the Land Records of the town of Groton.

"The above Certificate of Occupancy shall state that the use may be continued indefinitely as long as it conforms to the requirements of Section 13 of these regulations and failure to obtain such Certificate of Occupancy shall be a violation of these Zoning Regulations."

The plaintiff provided the site plan referred to in § 13.7, and no issue is raised about any failure of his to "indicate sufficient information as required in Section 11.4 to fully define the existing nonconformity." The defendant commission, however, ultimately concluded that the plaintiff failed to provide sufficient evidence, under § 13.7, to prove a preexisting continuous nonconforming use.

In its conclusion that § 13.7 was unconstitutional, the trial court focused on that language of § 13.7 which requires "sufficient proof as the Zoning Commission may require" to prove the existence of a nonconforming use. The court held that such language "must necessarily result in unequal and arbitrary application of the section to affected property owners." We agree. The language in § 13.7 relied upon by the trial court, even with its reference to such things as tax receipts or sales tax permits, renders § 13.7 unconstitutional because of its failure to meet the constitutional mandate that a regulation be as reasonably precise as the subject matter requires and as reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations. See *Forest Construction Co. v. Planning & Zoning Commission,* supra. We reach this conclusion even after examining § 13 in its entirety. None of the subsections of § 13 adds sufficient precision to § 13.7 to allow it to pass constitutional muster.

Section 13.1[17] embodies the statement of purpose of § 13. Besides defining a nonconforming use,

---

[17] Section 13.1 of the zoning ordinance of the Noank fire district provides:

"STATEMENT OF PURPOSE

"A. A nonconforming use, building or structure is one which existed lawfully, whether by variance or otherwise, on the date this Zoning Ordinance or any amendment thereto became effective, and which fails to conform to one or more of the applicable regulations in the Zoning Ordinance or such amendment thereto.

"B. It is a fundamental principle of zoning law that nonconformities are not to be expanded. This principle is declared to be the intent of this ordinance.

"C. It is the further intent of this ordinance that existing nonconformities shall not cause further departures from the Zoning Ordinance, and therefore the existence of any present nonconformity anywhere in the Fire District shall not in itself be considered grounds for the issuance of a variance for any other property."

building or structure, it merely declares that the fundamental principle of zoning law that nonconformities are not to be expanded is "the intent of this ordinance." It also states that "[i]t is the further intent of this ordinance that existing nonconformities shall not cause further departures from the Zoning Ordinance."

Section 13.2 is entitled "General Provisions" and has several subsections. Section 13.2.1 provides that "[n]othing in the regulations shall prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of these regulations or any amendment thereto" except as otherwise specified. Section 13.2.2[18] states that no conformity shall be deemed to have existed on the date of the ordinance or any amendment thereto unless "a. The nonconformity has been in existence on a continuous basis and to the fullest possible extent" and "b. If such nonconformity is a use, such use had not been abandoned within the meaning of Section 13.6.2."[19]

Section 13.2.3 merely proclaims that in order to protect the fair interests of all parties, nothing in the ordinance shall be deemed to require a discontinuance of a nonconformity because of mere change of title or possession of property, except in the case of nonconforming lots under § 2.12. Section 13.2.4 provides that any nonconforming use located in a

---

[18] Section 13.2.2 of the zoning ordinance of the Noank fire district also contains a provision to the effect that the ordinance does not require a change "in the plans, construction or designated use of any structure" upon which "actual construction" was "lawfully begun in good faith" prior to the date of the zoning ordinance or any amendment. This "actual construction" provision is not in issue, and, in any event, does not aid the defendants on the issue of standards for a § 13.7 determination.

[19] "Abandonment" has not been put in issue.

district in which a special exception may be granted for such a use under § 12 of the regulations "may be continued as a permitted use if a plan is submitted and approved in accordance with Section 13.7 of these regulations."[20] Sections 13.2.5[21] and 13.2.6[22] also hardly contribute to any reasonable

[20] This reference to § 13.7 ties into what the plaintiff claims is the lack of standards for a § 13.7 determination. Also, the plaintiff claims that the ordinance permits a treating of a § 13.7 application as an application for a "special exception," which the plaintiff argues it cannot do. Although this "special exception" claim of the plaintiff does have a certain appeal, we need not discuss it since it is not necessary for our disposition of this appeal. We do note, however, that we have said that the terms "special exception" and "special permit" hold the same legal import and can be used interchangeably; see *Anastasi* v. *Zoning Commission*, 163 Conn. 187, 190, 302 A.2d 258 (1972); that a special exception permits a property owner to put his property to a use which the regulations expressly permit under conditions expressly specified in the regulations; see *W A T R, Inc.* v. *Zoning Board of Appeals*, 158 Conn. 196, 200, 257 A.2d 818 (1969); and that a permitted use is not a nonconforming use. *Melody* v. *Zoning Board of Appeals*, 158 Conn. 516, 519, 264 A.2d 572 (1969).

Section 13.2.4 of the zoning ordinance of the Noank fire district provides:

"Any nonconforming use located within a district in which a special exception may be granted for such a use under Section 12 of these regulations may be continued as a permitted use if a plan is submitted and approved in accordance with Section 13.7 of these regulations. However, Section 13.3 shall govern as to the expansion or substantial alteration of such uses."

[21] Section 13.2.5 of the zoning ordinance of the Noank fire district provides:

"Lack of required lot area per dwelling unit, parking, loading, or yards, and excessive building bulk or coverage shall not in themselves contribute to the determination of a use being nonconforming. However [lack of required screening or other safeguards, im] proper use of outdoor areas, excessive area occupied by a use, improper arrangement of parking, loading or driveways, and similar deviations shall be deemed nonconforming uses."

[22] Section 13.2.6 of the zoning ordinance of the Noank fire district provides:

"All nonconforming uses shall be subject to the same regulations for building arrangement and operation as those that apply to conforming uses in the district in which they are located."

standard, ascertainable by a use of affected land, toward the determination of what the commission may require in passing upon an application for the establishment of a nonconforming use under § 13.7. Sections 13.3, 13.4 and 13.5 concern "Enlarging or Moving," "Change of Use" and "Maintenance and Restoration of Structures Containing Nonconforming Uses" respectively and an examination of them, because of their focus, yields no standards relevant to a § 13.7 determination. Section 13.6, entitled "Abandonment of Nonconforming Uses," contains a definition of abandonment, and provides that any such use, once abandoned, shall not be reestablished. That section also sets out several examples which constitute prima facie evidence of intent to abandon. This section does not aid the defendants in their argument concerning the existence of ascertainable standards in the ordinance for a § 13.7 determination.

In agreeing with the trial court's conclusion, we do not adopt the defendants' view of *American Power & Light Co.* v. *S.E.C.*, 329 U.S. 90, 67 S. Ct. 133, 91 L. Ed. 103 (1946), and *Ours Properties, Inc.* v. *Ley*, 198 Va. 848, 96 S.E.2d 754 (1957), two cases to which both parties refer. The defendants argue that the language sustained in *American Power & Light* is "similar in breadth to that of the subject Noank ordinance." We cannot accept this claim because the language involved in that case, which allegedly set out unconstitutional standards, was reasonably qualified by language that immediately followed the standard attacked.[23] This is not so

[23] The relevant portion of § 11 (b) (2) of the Public Utility Holding Company Act of 1935 which was construed, and to which the defendants refer, is as follows: "To require by order, after notice and opportunity for hearing, that each registered holding company,

here where the granting or denying of a § 13.7 application is left to the undefined discretion of the commission. The standard of "sufficient proof" as the commission "may require" is set forth without any reasonable parameters.

The defendants also claim that the language sustained in *Ours Properties* contains "a delegation of fact-finding authority stated in language similar to that of the Noank ordinance at issue."[24] The defendants argue that the standard in the *Ours Properties* ordinance, i.e., "for which satisfactory evidence is presented," is similar to the language challenged here. In *Ours Properties,* the Virginia Supreme Court said: "Satisfactory evidence 'means evidence which' frees from doubt, suspense or uncertainty; gives assurance to 'sets at rest the mind; * * *.' Webster's New International Dictionary, Second Edition . . . ." *Ours Properties, Inc.* v.

---

and each subsidiary company thereof, *shall take such steps as the Commission shall find necessary* to ensure that the corporate structure or continued existence of any company in the holding-company system does not unduly or unnecessarily complicate the structure, or unfairly or inequitably distribute voting power among security holders, of such holding-company system." (Emphasis added.)

[24] The relevant portion of the municipal zoning ordinance at issue in *Ours Properties, Inc.* v. *Ley,* 198 Va. 848, 96 S.E.2d 754 (1957) (which concerned permitted uses in an M-1 light industrial district) provided: "In M-1 light industrial districts the following uses are permitted:

"(1) All uses permitted in a C-2 district, except that no residential use shall be established in an M-1 district.

"(2) Stores for the conduct of any wholesale business.

"(3) Laundries, cleaning and dyeing plants, bottling works, milk depots, bakeries, building material and lumber yards, planning mills, feed and fuel yards, warehouses *and any other industrial establishment for which satisfactory evidence is presented that such establishment will not adversely affect any contiguous district through the dissemination of smoke, fumes, dust, odor, or noise or by reason of vibration and that such establishment will not result in any unusual danger of fire or explosion."* (Emphasis added.)

*Ley,* supra. After examining the relevant portion of the ordinance in that case, and comparing it with the Noank ordinance, we disagree with the defendants' claim of similarity. Again, the language that follows the "satisfactory evidence" phrase in *Ours Properties* is much different from that found in the Noank ordinance. In conclusion, § 13.7 does not pass the constitutional test necessitating ascertainable standards; the parameters of the commission's discretion are not as reasonably defined as required.[25] Neither a reading of the section in context, nor the reference to such things as tax receipts or sales tax permits, save it.

There is no error in the April appeal.

We take up now the August appeal which the plaintiff claims, and the defendants deny, is moot. The defendants claim that the trial court erred in holding that the August appeal was moot solely because the court had held § 13.7 invalid in the other action.[26] The defendants specifically argue that the

---

[25] Our decision of unconstitutionality is specifically confined to the Noank ordinance that is involved in this appeal. Because § 13.7 lacks such standards, we agree that the trial court was correct in finding that it was invalid not only as to the plaintiff but as to all affected property owners.

[26] In making this claim the defendants note that § 19.2 of the regulations gives the zoning inspector power "to order in writing the remedying of any condition found to exist in violation of these regulations" and that § 20.2.1 gives the zoning board of appeals the power to review his decisions since the board can "hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the agent of the Commission or any other official charged with the enforcement of these regulations." Section 2.1 ("Compliance with Regulations") provides that "[n]o land, building, or premises or part thereof shall hereafter be used . . . except in conformity with these regulations . . . ." Section 3 describes the permitted uses in areas zoned as village residential districts and specifically restricts (in § 3.1.8) the owner or occupant of property in such districts to building, rebuilding and storing a

court should have considered "the status of the Zoning Enforcement Officer's decision to issue a notice of violation to the plaintiff for the conduct of a commercial boatyard in an area zoned for residential use." The defendants contend that, in issuing the notice of violation to the plaintiff, the zoning enforcement officer "acted independently from the Zoning Commission under color of provisions other than the disputed § 13.7." They maintain that when a property owner or occupant conducts a commercial boatyard in a village residential district, he is in violation of the ordinance concerning which the zoning enforcement officer is empowered to issue a notice of such violation, and whose action is subject to review by the zoning board of appeals. The defendants thus claim that because the zoning enforcement officer acted "independently" of the zoning commission under "color" of provisions other than § 13.7, the August appeal is not moot. We do not agree.

Under § 13.7, the zoning commission is the entity that determines whether or not a valid nonconforming use exists; nothing in the ordinance authorizes the zoning enforcement officer to make any such determination. The matter before the defendant board of appeals was the violation notice issued by the zoning enforcement officer on June 19, 1975. That notice was the result of the determination by the commission, under § 13.7, that the plaintiff had not established a valid nonconforming use under § 13.7. This was the posture in which the defendant

---

boat or boats only "for his own personal use or sale." That section also provides that "[i]n interpreting the provisions of this section, receipt or compensation for the storing of a boat or production of more than one boat at any given time is prima facie evidence of a zoning violation." Section 3.1.8.

board of appeals received and decided[27] that appeal. The zoning enforcement officer did not act independently of the commission; rather he acted as the commission's agent in issuing the violation notice which was appealed.[28] He had no authority under the ordinance to make an independent determination of a nonconforming use. Moreover, we note that § 13.7 provides in part that "[u]pon approval of the Zoning Commission that the non-conforming use is in fact a pre-existing non-conforming use, a

---

[27] The Notice of Action by the zoning board of appeals was as follows:

"NOANK FIRE DISTRICT
ZONING BOARD OF APPEALS
NOTICE OF ACTION

The Noank Zoning Board of Appeals acted on the following application after a public hearing on Thursday, July 15, 1976.

Number 76-9

Application of Robert Helbig appealing the violation notice issued by the Noank Zoning Enforcement Officer on June 19, 1975 regarding the storage of boats on land owned by the applicant at 38 Bayside Avenue, more specifically described as Lot 7, Block 283, Map 132 in the records of the Tax Assessor of the Town of Groton.

Decision:  Appeal denied, decision of Zoning
           Enforcement Officer affirmed.

Dated at Noank, Connecticut, this 30th day of July, 1976.

Ashby Anderson
Secretary"

[28] On June 19, 1975, the zoning enforcement officer wrote the plaintiff the following letter, which indicates that he did not act independently of the commission as the defendant claims:

"June 19, 1975
Mr. Robert Helbig
126 Prospect Hill Road
Noank, Connecticut 06340

Dear Mr. Helbig:

The Noank Zoning Commission completed their review of the evidence provided to date with regard to the use of the property you lease and hold option on at Bay Side Avenue described as Lot 7,

Certificate of Occupancy shall be issued . . . ."
Section 19.6 of the regulations, entitled "Certificate
of Occupancy," provides in part "a Certificate of
Occupancy [shall be] . . . issued by the Building
Inspector . . . ." This underscores the lack of

Block 283, Map 132 in the records of the Tax Assessor of the Town
of Groton.

In the opinion of the Commission, inadequate evidence has been
provided to prove the operation of a pre-existing non-conforming use
on this property. As such, this letter is to serve notice to you as
optionee that a violation of Noank Zoning Regulations exists on the
subject property. The property in question is located within the
Village Residential Zone, and use of your property for the storage
of boats as part of a commercial operation is strictly prohibited. As
specifically stated in Section 3.1.8 of the Noank Zoning Regulations
'. . . receipt of compensation for the storage of boats; or production
of more than one boat at any given time is prima facie evidence of
a zoning violation.'

Unless the boats and travel trailer lift which are stored on the
subject property and under your control are removed from this prop-
erty in 10 days, I shall be forced to turn this matter over to the
Prosecutor's office for the Tenth Circuit.

State Statutes provide that any person who maintains any building
or premises in which any zoning violation exists, shall be fined not
less than ten nor more than two hundred and fifty dollars for each
day that such violation continues. I shall look forward to your
immediate attention to this matter, and if there are any questions,
do not hesitate to call me at 445-2027.

Very truly yours,

/s/ Monte S. Lee
Monte S. Lee,
Zoning Enforcement Officer
Noank Fire District"

Moreover, the transcript of the meeting of the zoning board of
appeals of July 15, 1976, includes testimony of some members of the
zoning commission. One member said in part: "So I feel that
Monte Lee [the zoning enforcement officer] when we reinstructed
him to issue the zoning violation, we were right and he is right and
that is my opinion." Another member said in part: "The Noank
Zoning Board of Appeals has a letter signed by the Secretary of
the Zoning Commission which states our position, recommends to the
Zoning Board of Appeals that there was no pre-existing, non-
conforming use on that property."

authority of the zoning enforcement officer to issue the certificate of occupancy provided for by § 13.7. Once § 13.7 is found to be invalid, we agree with the plaintiff that this determination removes from the Noank fire district zoning regulations the only procedure under those regulations for "determining" what constituted a valid nonconforming use.

With regard to the defendant's claim that the court erred by not considering the matter of the zoning enforcement officer's authority to issue a notice of violation under provisions other than § 13.7, we find no merit. Even if we assume that the pleadings in the August appeal properly raised this issue, this was hardly the theory upon which this appeal was presented to and decided by the trial court. See *Machiz* v. *Homer Harmon, Inc.,* 146 Conn. 523, 525, 152 A.2d 629 (1959) ; *Treat* v. *Town Plan & Zoning Commission,* 145 Conn. 406, 409, 143 A.2d 448 (1958) ; *Stavola* v. *Bulkeley,* 134 Conn. 186, 189, 56 A.2d 645 (1947) ; Maltbie, Conn. App. Proc. § 42. It is true that the August appeal was taken to the defendant zoning board of appeals from the "decision" of the zoning enforcement officer. It is, however, abundantly clear that what was appealed to the zoning board of appeals was not an independent determination of the zoning enforcement officer, but the determination of the zoning commission, acting pursuant to § 13.7. We have already pointed out that the zoning enforcement officer had no authority to make a determination as to what was, or what was not, a valid preexisting nonconforming use under the ordinance.[29] There is, then, no actual

---

[29] Quite apart from his lack of authority to make an independent determination of the validity of the claimed nonconforming use, it also cannot be successfully claimed that he, in fact, made an independent determination of its validity.

controversy for us to decide under the August appeal. Moreover, the relief which the plaintiff sought in his August appeal had already been granted by the court in his April appeal. Accordingly, the August appeal is moot because of the " 'well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow.' " *Delevieleuse* v. *Manson,* 184 Conn. 434, 436, 439 A.2d 1055 (1981), quoting *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944); see *Harkins* v. *Driscoll,* 165 Conn. 407, 409, 334 A.2d 901 (1973).

The August appeal (*Helbig* v. *Zoning Board of Appeals*) is dismissed.

There is no error in the April appeal (*Helbig* v. *Zoning Commission*).

In this opinion the other judges concurred.