[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal. pursuant to Connecticut General Statutes8-8, from the decision of the Zoning Commission of the City of Bridgeport ("the Commission"). The Commission denied the CT Page 6230 application of the plaintiff, Moshe Felsman, for a special permit to build an apartment building on his property at 160 Lincoln Avenue, Bridgeport. The plaintiff sought the permit under Chapter 8 of the Zoning Regulations of the City of Bridgeport to build a three-story woodframe apartment house containing twelve units, to be combined with an existing three-unit structure on the adjoining lot for purposes of management and parking facilities.
Subsequent to the public hearing on September 25, 1989, the Commission denied the plaintiff's applications reasoning that "granting of the petition would result in an overuse of the property." (ROR #1(a), p. 11; see also 1(1).
The plaintiff sought a special permit pursuant to Chapter 8(2)(c) of the Bridgeport Zoning Regulations. Chapter 8(2) states:
 Section 2. Permitted Uses. No building or premises shall be erected or structurally altered which is arranged, intended or designed to be used, except for one or more of the following purposes:
 (a) Any use permitted in a Residence A, Residence B or Residence BB Zone.
 (b) If permitted as a special exception by the Zoning Board of Appeals, any use permitted in a Residence A, Residence B or Residence BB Zone as a special exception.
 (c) Multiple family dwellings or apartment houses subject to the requirements of Chapter 16 if permitted by the Zoning Commission as a Special Exception. The development of land for such apartments as defined in Section 7 of Chapter 16 shall only be considered for approval after a public hearing held thereon. Before approving the Special Exception, the Commission shall take into account, the size and intensity of such development and its effect upon the surrounding properties, the capacity of the adjacent and nearby intersecting streets to handle peak traffic loads and hazards created by the use; the extent, nature and arrangement of parking facilities; the location of driveway entrances and exists; fire access lanes and hazards involved. The Zoning Commission in approving CT Page 6231 such development may impose reasonable conditions and limitations on the parking areas, on the front, side and rear yards to be provided in excess of the requirements of this Chapter to lessen further impact upon the neighborhood.
(ROR #2(a) pp. 11-12.)
Section 8(2)(c) incorporates the requirements of chapter 16, including 3(a), which states:
 Section 3. Parking Areas. The following provisions shall be made for such automobile parking, the designated space to be exclusive of the driveways and the lanes by which ingress and egress to and from such parking space may be obtained:
 (a) For any apartment house as hereinafter defined, 150 square feet of parking space for each apartment.
and 3(c), which states:
 (i) If there shall be any conflict between the parking requirements of this chapter as to any of the foregoing uses and the parking requirements of the Garden Apartments Residence Apartment, Business Number 4 or Business Number 3 Zones, that provision which shall require the greater parking area shall take precedence and be controlling.
(ROR #2(a), p. 30.)
At the public hearing before the Commission, plaintiff's counsel explained that the current building plan proposed a new three-and-a-half floor, 12-unit structure. (ROR #1(a), pp. 2 and 8.) Counsel noted that this was a scaled-down version of a previously denied plan that proposed a four-story, 15-unit structure. The plaintiff's architect testified that the structure would be built next to an existing three-unit structure on an adjoining lot owned by the plaintiff. (ROR #1(a), p. 3.) The two buildings, comprising a total of 15 units, would share a common driveway. (ROR #1(a), p. 3)
Plaintiff's counsel also explained that the plan provided for a total of 30 parking spaces, or two spaces per unit. (ROR #1(a), p. 10.) The Commission stated that 15 units would CT Page 6232 require a total of 30 parking spaces. (ROR #1(a), p. 10.) The site plan, however, shows only 28 spaces. (ROR #1(c).) The Commission included no reference to the parking space issue in the notification of its decision. (ROR #1(a), p. 11; see also ROR #1(1).)
The documents comprising the record were returned to the court on March 30, 1990. The court held a hearing on February 19, 1991.
In order to assert a statutory right to appeal the decision of an administrative agency, the appellant must comply strictly with the statute creating the right. Simko v. ZBA, 206 Conn. 374,377 (1988). Connecticut General Statutes 8-8 provides that any person aggrieved by a decision of a commission or board may appeal to the superior court for the judicial district in which the municipality is located.
Aggrievement is a prerequisite to maintaining an appeal. I See Smith v. Planning Zoning Board, 203 Conn. 317, 321 (1987). The court made a finding of aggrievement at the hearing before it on February 19. 1991. See Hearing Transcript, p. 3.
A trial court may grant relief on appeal from an agency decision when the agency has acted illegally, arbitrarily, or in abuse of its discretion. Raybestos-Manhattan, Inc. v. PZC,186 Conn. 466, 470 (1982). The court is not at liberty, in reviewing an agency's decision, to substitute its judgment for that of the agency. Frito-Lay, Inc. v. PZC, 206 Conn. 554,572-73 (1988). The court is simply to determine whether the record reasonably supports the conclusions reached by the agency. Primerica v. PZC, 211 Conn. 85, 96 (1989). The plaintiff has the burden to prove that the agency acted improperly. Adolphson v. ZBA, 205 Conn. 703, 707 (1988).
The plaintiff brings this appeal before the court on several grounds. In his complaint filed October 24, 1989, the plaintiff alleged, inter alia, that:
a) he had sought a special permit for a "scaled down" plan to build a 12-unit apartment house after an earlier request for a 15-unit apartment had been denied on the basis of overintensification of use; and
b) the Commission denied the permit, again claiming overintensification, despite the plaintiff's compliance with all zoning regulations and a dearth of evidence to support its denial.
In its memorandum in opposition, filed November 14, 1990, CT Page 6233 the Commission argued that although the proposed structure included only 12 units, combining it with the building next door would increase the total to 15 units. The Commission also argued that it considered "the size and intensity of development of the application."
A special exception allows a property owner to use his property in a manner expressly permitted by the regulations, and the proposed use must satisfy the standards set forth in the regulations. Housatonic Terminal Corp. v. PZB, 168 Conn. 304,307 (1975). When ruling on a special exception, a zoning authority acts in an administrative capacity, and its function is simply to determine whether the proposed use is expressly permitted and whether the standards are satisfied. Id. at 307.
When the zoning authority has stated the reasons for its decision, the court may only determine whether those reasons are pertinent and supported by the record. Daughters of St. Paul, Inc. v. ZBA, 17 Conn. App. 53, 56 (1988). Although the zoning authority's failure to state its reasons on the record is not fatal, the court must search the record to determine if it supports the decision. A. P. W. Holding Corp. v. PZB, 167 Conn. 182,186 (1974).
The plaintiff applied for his permit under Chapter 8 of the Bridgeport Zoning Regulations for "Residence C Zones." Chapter 8 incorporates Chapter 16, by reference, which requires "150 square feet of parking for each apartment." (Emphasis added.) (ROR #2(a).) Despite assertions at the agency hearing (ROR #1(a)) and at the trial court (see February 19 Hearing Transcript) that the Commission requires two parking spaces per unit, Regulation 16-3(a) specifically requires 150 square feet of parking space per apartment.
The site plan indicates 28 parking spaces, each of which is eight feet wide by 18-1/2 feet long (ROR #1(c).) Thus, each 3 space is 148 square feet, (8 x 18-1/2), giving the parking area a total of 4, 144 square feet of parking space (28 spaces x 148 sq. feet). This total exceeds by far the 2,250 square feet (15 units x 150 sq. feet) required by Zoning Regulation 16-3(a).
Zoning Regulation 16-3(i) states that in the event of a conflict between 16-3(a) and the parking requirements of the Residence Apartment, or other zone regulations, "that provision which shall require the greater parking area shall take precedence and be controlling." (ROR #2(a), p. 30.) Residence C Zoning Regulation 8(2)(c) contains no parking standard. Rather, Zoning Regulation 8(2)(c) merely says "the Zoning Commission . . . may impose reasonable conditions and limitations on parking areas. . . ." (ROR #2(a), p. 12.) This fails to CT Page 6234 constitute a standard.
The only other point of contention was whether the plan conformed to Zoning Regulations regarding coverage and setbacks. Zoning Regulation 8-4 concerns minimum square footage of subdivisions, not maximum coverage of nonsubdivisions. The court agreed and concluded, without objection, that there was no maximum coverage restriction and that the building footprint was limited by the setbacks. See Hearing Transcript, pp. 19-24. Moreover, the record indicates that the plan met all setback and height requirements. (ROR #1(a), p. 8.)
The record contains no documents to show there was a maximum area restriction or, if there was, that the plaintiff's plan exceeded it. (ROR #1(a).) Therefore, the record is devoid of any evidence of overuse based on the size or scope of the proposed construction.
The record fails to show that the plaintiff's plan violated any zoning regulation. Absent any violations, moreover, the Commission had no discretion to find an overintensification of use, despite the Commission's claim to the contrary. Hearing Transcript, pp. 24-25. On the contrary, in ruling on a special exception, the Commission acts in an administrative capacity, and its sole function is to determine whether the use is expressly permitted and whether the standards are satisfied. Housatonic Terminal Corp., 168 Conn. at 307. The Commission's purely administrative function precludes it from having any discretion to make a finding not supported by the record. Thus, the Commission could not make a finding of overintensification if it failed to show any violation of the Bridgeport Zoning Regulations.
When the specifications of the application meet the specifics of the regulations and the only reason for denial is j grounded in some subjective discretionary standard, it raises the question whether the regulatory scheme as applied and on its face is impermissibly vague under the Constitution.
The Supreme Court has recently spoken twice on this subject in Bierman v. Westport Planning and Zoning Commission, 185 Conn. 135
and Helbig v. Zoning Commission, 185 Conn. 294.
The Bierman case has discouraged attacks on the constitutionality of zoning regulations. However, this court believes the principles cited in Bierman should be reexamined in light of Helbig.
The Supreme Court in Bierman v. Planning Zoning Commission, 185 Conn. 135, stated "The rule extant under our CT Page 6235 zoning cases is that a party who has sought to avail himself of a zoning ordinance by making an application thereunder is precluded in the same proceeding from raising the question of its constitutionality." Subsequent to Bierman, the Supreme Court decided Helbig v. Zoning in which it permitted an attack on the constitutionality of the zoning regulations where, instead of making an application under the regulations as did the plaintiff in Bierman, the appellant simply ignored them until they were forced upon him by a cease and desist order.
The basic distinction between Bierman and Helbig, was that the appellant in Bierman followed the regulations in presenting his application to the Commission, whereas the appellant in Helbig ignored the regulations. There is no other substantial distinction. It is difficult to believe that the Supreme Court meant to grant a bonus to one who ignores the rules as opposed to one who complies. When faced with the facts in the Helbig case, the Supreme Court rightly decided there was no alternative but to allow the appellants' attack on the regulation. This court has little doubt that had the Helbig case been decided first, the result in Bierman would have been different.
It is the opinion of this court that Helbig implicitly overrules Bierman, because to hold otherwise would be to encourage vigilante zoning.
The court in Bierman merely restated, without explication, that one who avails himself of a zoning ordinance cannot attack its constitutionality in the same proceeding. Bierman,185 Conn. at 139. The court relied on a line of cases that ultimately derive from Holley v. Sunderland, 110 Conn. 80
(1929). The court in Holley stated:
 The bringing of his application and appeal is not only an acceptance of the validity of the statute and of the remedy provided by it, but it is in fact acknowledgment to the court of the validity of the Act under which his action was brought. If the statute is held void his application and appeal must go with its downfall. The two positions are entirely inconsistent, and utterly repugnant to any reasonable procedure.
The court in Helbig deemed the facts before it to constitute an exception because the plaintiff was coerced to comply with the regulations by a cease-and-desist order. The plaintiffs in Bierman and the present case, however, seek to conform with the regulations to avoid sanctions for noncompliance. Ultimately, any attempt to comply with zoning CT Page 6236 regulations is prompted by coercion, whether subtle or overt.
If applicants comply to avoid a sanction, resorting to the regulations and then challenging their constitutionality on appeal does not present a typical "sword and shield" situation. That is, applicants do not attempt to comply merely to benefit themselves, but to avoid sanctions. The regulations do not create one's property rights, but merely dictate the way one can exercise those rights. Zoning regulations are limitations on property rights. Indeed, if the regulation has no discernible standard, the applicant's property rights are left to the whimsy of the Commission.
The issue before this court is whether or not Section 8(2)(c) of the Bridgeport Zoning Regulations can be the basis for a denial of the plaintiff's application for a Special Exception. It is uncontroverted that the plaintiff's application complies with all the other applicable regulations. During oral argument it was the claim of the defendant Commission that the standards for a special exception in this case are contained in Section 8(2)(c). See February 19 Hearing Transcript, p. 4. The Commission also claims that said section permits it to consider "various aspects" and "determine whether or not this would fit as a special exception." Hearing Transcript, p. 4. Size and intensity are referred to in said section, which also authorizes the zoning commission to impose parking requirements "in excess of the requirements of this chapter." Nowhere in said regulation can one determine the size or number of units permitted or the number of parking spaces required. The application was denied for overintensification of use. It is the claim of the Commission that 15 units and insufficient parking constitute an overintensification of use. Hearing Transcript, pp. 7-8. It would appear that the Commission is requiring two spaces per unit, which is in excess of the specific requirements set forth in Chapter 16 of said regulations. Hearing Transcript, p. 8.
Section 8(2)(c) governs the Commission's approval or denial of a special exception. On review of said section it is evident that the general objectives and the discretion impliedly granted to the Commission are unconstitutionally vague and inadequate to insure the uniform application of the zoning ordinances. Said section fails to provide the owner with specific advanced notice as to what improvements can be made on his land. Said regulation is vague on its face and creates a fatal ambiguity. The objectives in Section 8(2)(c) used for determining the approval of land use fail to establish constitutionally sufficient standards under Connecticut General Statutes 8(2) and under the fourteenth amendment due process guarantees and constitutes an illegal delegation of legislative power to an CT Page 6237 administrative board in that it gives the latter uncontrolled power to grant or withhold approval according to its unregulated discretion. The defendant Commission claims that under Section 8(2)(c) it has liberal discretion. Hearing Transcript, p. 24.
The court had some confusion as to whether or not Section 8(2)(c) was merely a section citing objectives with no binding effect and, as such, innocuous. However, based upon the action of the Commission and claims in oral argument, the court could only conclude that it contains the standards for issuing a special exception in Bridgeport.
Based on the foregoing, the court finds that:
a) the plaintiff complied with all the ascertainable regulations and standards applicable to his application.
b) the record fails to show that the plaintiff's application violated any zoning regulations.
c) Section 8(2)(c) of the Bridgeport Zoning Regulations when applied as standards for the granting of a special permit "does not pass the constitutional test necessitating ascertainable standards." Helbig v. Zoning Commission,185 Conn. 294, 315.
Therefore, the court finds that the action of the defendant Commission in denying the plaintiff's application was illegal, arbitrary and in abuse of its discretion and hereby sustains the plaintiff's appeal.
DEAN, JUDGE.