NORTHEAST PARKING, INC., ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF WINDSOR LOCKS

BRADLEY AIRPORT VALET PARKING, INC. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF WINDSOR LOCKS
(AC 15684)

Foti, Landau and Hennessy, Js.

*Argued September 25—officially released December 16, 1997*

*Thomas W. Fahey, Jr.*, with whom, on the brief, was *Richard T. Roznoy*, for the appellants (intervening defendants).

*William J. Sweeney, Jr.*, with whom, on the brief, was *Thomas P. Griffen*, for the appellees (plaintiffs).

*Opinion*

FOTI, J. The intervening defendants, Park Plaza, Inc., and Winchester Partnership, appeal from the judgment of the Superior Court sustaining the administrative appeals of the plaintiffs, Northeast Parking, Inc., Bradley Air Parking Ltd. Partnership and Bradley Airport Valet Parking, Inc., with respect to an amendment to a special use permit granted to the intervening defendants by the defendant planning and zoning commission of the town of Windsor Locks (commission).[1] Following oral argument in this court, we asked the parties, sua sponte, to brief and argue the question whether the plaintiffs were aggrieved by the commission's decision. Because we hold that the plaintiffs were not aggrieved,

[1] This appeal represents two actions that were consolidated in the Superior Court.

we dismiss the intervening defendants' appeal and remand the case to the Superior Court with direction to vacate the judgment and to dismiss the plaintiffs' appeals.

The following facts are relevant to this appeal. The plaintiffs and the intervening defendants are business competitors who operate valet parking services near Bradley International Airport in the town of Windsor Locks (town). The airport is also in the town. The plaintiffs' business operations, outdoor valet parking services, predate a 1985 ordinance prohibiting valet parking facilities in the town. The 1985 ordinance was in effect until 1987 when the commission promulgated regulations identifying the uses of land permitted in the town. Valet parking is not a use of land permitted in the town pursuant to the regulations.[2]

In 1990, the commission amended the town zoning regulations by adopting §§ 407 and 408.[3] In January, 1991, pursuant to § 408,[4] the intervening defendants

[2] The permitted uses of land in the town are identified in chapter IV of the zoning regulations.

[3] Section 407 applies to residential zones and § 408 applies to industrial zones.

[4] The Windsor Locks zoning regulations, § 408, titled "Adaptive Reuse Regulation—Industrial," provides in pertinent part: "In the Industrial 1, 2 and 3 zones only, the Commission may permit by Special Permit after a public hearing the rehabilitation or adaptive reuse of vacant, deteriorated or underutilized buildings in accordance with the following regulations:

"A. CRITERIA

"1. One or more contiguous parcels with vacant, deteriorated or underutilized buildings containing combined gross floor area in excess of 150,000 square feet.

"2. Average monthly or annual vacancy of 50 percent or more of the existing floor area for a period of twenty four (24) months or more immediately preceding the date of application.

"3. Substantial benefit to the Town.

"4. Compatibility with the surrounding area.

"5. Substantial inability to utilize the property under the provisions of the industrial zoning districts.

"B. PERMITTED USES

"For purposes of this section, the Commission may permit *any* use which

applied for and received a special permit for the adaptive reuse of a portion of a building that they own at 295 Ella Grasso Turnpike. The special permit allowed the intervening defendants to use a portion of their building for 800 indoor valet parking spaces.

In March, 1993, the intervening defendants sought approval from the commission to amend the special permit by increasing the number of valet parking spaces in their building by 348. The commission approved the amendment on June 14, 1993, and the plaintiffs appealed to the Superior Court. The Superior Court sustained the plaintiffs' appeal, deciding that the commission improperly approved the intervening defendants' application to amend the special permit in light of the fact that valet parking is not a permitted use under the applicable regulations. The intervening defendants appealed.

To appeal an administrative decision, the plaintiff must be aggrieved by the decision. See *Bakelaar* v. *West Haven*, 193 Conn. 59, 65, 475 A.2d 283 (1984). "In the case of a decision by a zoning commission . . . 'aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." General Statutes § 8-8 (a) (1). The plaintiffs do not claim statutory aggrievement. Therefore, for the plaintiffs to have standing to bring an appeal, they must meet the test of classic aggrievement, which was recently summarized by our Supreme Court in *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, 242 Conn. 152, 699 A.2d 142 (1997), and from which we quote at length.

it determines is consistent with the criteria set forth above, even if said use is not otherwise permitted in Chapter IV of these Regulations, except that residential uses and retail package stores are expressly prohibited." (Emphasis in original.)

"The test for aggrievement long recognized by this court is set forth in our decision in *State Medical Society* v. *Board of Examiners in Podiatry*, 203 Conn. 295, 524 A.2d 636 (1987). There we stated that [t]he fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision . . . . *Cannavo Enterprises, Inc.* v. *Burns*, 194 Conn. 43, 47, 478 A.2d 601 (1984); *Bakelaar v. West Haven*, [supra, 193 Conn. 65]. Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected. *O'Leary* v. *McGuinness*, 140 Conn. 80, 83, 98 A.2d 660 (1953). *Hall* v. *Planning Commission*, 181 Conn. 442, 445, 435 A.2d 975 (1980). . . . [*State Medical Society* v. *Board of Examiners in Podiatry*, supra,] 299–300. The determination of aggrievement presents a question of fact for the trial court and a plaintiff has the burden of proving that fact. *Mystic Marinelife Aquarium, Inc.* v. *Gill*, 175 Conn. 483, 493, 400 A.2d 726 (1978). . . . *United Cable Television Services Corp.* v. *Dept. of Public Utility Control*, 235 Conn. 334, 342–43, 663 A.2d 1011 (1995).

"The second prong of the aggrievement test requires the plaintiff to demonstrate that its asserted interest has been specially and injuriously affected in a way that is cognizable by law. See *State Medical Society* v. *Board of Examiners in Podiatry*, supra, 203 Conn. 300–301. *United Cable Television Services Corp.* v. *Dept. of Public Utility Control*, supra, 235 Conn. 343. [I]n considering whether a plaintiff's interest has been injuriously affected by [an administrative decision], we

have looked to whether the injury he complains of (his aggrievement, or the adverse effect upon him) falls within the zone of interests sought to be protected by the statutory provision whose violation forms the legal basis for [its] complaint. . . . *Air Courier Conference* v. *Postal Workers*, 498 U.S. 517, 523, 111 S. Ct. 913, 112 L. Ed. 2d 1125 (1991), citing *Lujan* v. *National Wildlife Federation*, 497 U.S. 871, 883, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). *United Cable Television Services Corp.* v. *Dept. of Public Utility Control*, supra, 344–45.

"Standing concerns the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." (Internal quotation marks omitted.) *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, supra, 242 Conn. 158–60.

Ordinarily, an allegation of adverse business competition is not sufficient to meet the classic aggrievement test. See *Whitney Theatre Co.* v. *Zoning Board of Appeals*, 150 Conn. 285, 288, 189 A.2d 396 (1963). The court will, however, assume jurisdiction over claims of unfair or illegal competition. *State Medical Society* v. *Board of Examiners in Podiatry*, supra, 203 Conn. 302.

The following additional facts are necessary for our determination of whether the plaintiffs are aggrieved. The citations and recognizances filed in the Superior Court in each case allege in part: "The plaintiff, a valet parking lot operator and owner of real estate located in the Town of Windsor Locks, relied upon the above referenced zoning regulations when making investments and business decisions and has been aggrieved, and its property interests, specifically its businesses and real estate, are adversely affected by the decision of the Commission."

The commission and the intervening defendants also raised the question of aggrievement in the trial court by

means of a motion to dismiss the appeal. The Superior Court, *L. Sullivan, J.*, held a hearing on the issue of aggrievement on several days between April 4 and June 25, 1994. The Superior Court found the following facts. Both the plaintiffs and the intervening defendants are engaged in the business of valet parking. The plaintiffs conduct their business outdoors. The intervening defendants conduct their business indoors. The planning and zoning ordinances do not define valet parking. A defense witness defined *valet parking* as a parking activity whereby the customers' automobiles are checked in at the parking facility and the customers and their luggage are transported to the airport. When the customers return to the airport, they are met and taken to the parking facility to get their automobiles. The Superior Court took judicial notice of the fact that valet parking is an adjunct to almost every major airport in the United States.

The Superior Court also found that § 408 provides that the commission may permit, by special permit, " '*any* use which it determines is consistent with the criteria set forth above . . . even if said use is not otherwise permitted in Chapter IV of these Regulations. . . .' " (Emphasis in original.) The intervening defendants, pursuant to the "*any* use" provision of § 408, obtained a special permit to valet park 800 vehicles within a building. In 1993, the intervening defendants, again pursuant to § 408, obtained an amendment to their permit that allowed them to expand their valet parking service by 348 parking spaces. The plaintiffs did not challenge the enactment of § 408 or the granting of the special permit allowing the intervening defendants to valet park 800 vehicles in their building. The plaintiffs did appeal from the granting of the amendment to the intervening defendants' special permit.

"It is well established that an appellate court will not retry the facts. Our review is to determine whether the

judgment of the trial court was clearly erroneous or contrary to the law. *Golfin* v. *Plymouth Industrial [Development] Corporation of Connecticut, Inc.*, 15 Conn. App. 804, 805, 543 A.2d 287 (1988)." *Fuller* v. *Planning & Zoning Commission*, 21 Conn. App. 340, 344, 573 A.2d 1222 (1990). "On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous . . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). We take no issue with the facts found by the Superior Court. We disagree, however, with its conclusion that the plaintiffs are aggrieved as a matter of law.

The Superior Court concluded, as a matter of law, that the zoning regulations of the town do not allow valet parking in any zone, either as a permitted use or as a special permit use. The fact that zoning regulations do not allow valet parking as a permitted use or as a special permit use has the legal and intended effect of restricting the expansion of valet parking in the vicinity of the airport. There is no evidence that the purpose of the ordinance is to " 'reduce nonconforming to conforming uses with all the speed justice will tolerate.' " *Helbig* v. *Zoning Commission*, 185 Conn. 294, 306, 440 A.2d 940 (1981).

The plaintiffs' use of their land long antedates the present ordinance regulating land use in the town.[5] The

---

[5] The plaintiffs operate their various businesses on parcels of land in which they have leasehold or fee simple interests.

use is a nonconforming use. The plaintiffs are not legally able to enlarge or expand their existing uses of their property because they cannot demonstrate "exceptional difficulty or unusual hardship" as required by General Statutes § 8-6. The town's refusal to allow valet parking as a permitted use or a special permit use is not intended to eliminate valet parking in the vicinity of the airport. The refusal to permit valet parking accomplishes a moratorium on the expansion of valet parking. Each of the plaintiffs has land on which to expand its valet parking if such use were not prohibited by the moratorium. The plaintiffs demonstrated that they compete for the same customers and that the mandate against expansion places them, and all other valet parking operators, at a competitive disadvantage in relation to the intervening defendants. The claim raised is the stifling of competition by specific governmental action. The Superior Court concluded that the plaintiffs are aggrieved and have standing to bring the appeal. We disagree.

The question before us is whether the plaintiffs, as leaseholders or owners of land, are aggrieved by the commission's granting of an amendment to the defendants' special permit. Therefore, we must examine the town's zoning regulations as they apply to the parties.

The enactment of zoning ordinances is a legislative function, which the court may not disturb unless the commission acted arbitrarily or illegally. See *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* 220 Conn. 527, 543, 600 A.2d 757 (1991). " 'Acting in such legislative capacity, the local board is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change.' " Id. Nothing in the record indicates that the commission acted arbitrarily or illegally.

"Although the position of the municipal land use agency is entitled to some deference; *Roy* v. *Centennial Ins. Co.*, 171 Conn. 463, 473, 370 A.2d 1011 (1976); the interpretation of provisions in the ordinance is nevertheless a question of law for the court. *Robinson* v. *Unemployment Security Board of Review*, 181 Conn. 1, 6, 434 A.2d 293 (1980); *Pascale* v. *Board of Zoning Appeals*, 150 Conn. 113, 116–17, 186 A.2d 377 (1962). The court is not bound by the legal interpretation of the ordinance by the [commission]. See *Schwartz* v. *Planning & Zoning Commission*, 208 Conn. 146, 152–53, 543 A.2d 1339 (1988). Rather, the court determines legislative intent from the language used in the regulations. *Weigel* v. *Planning & Zoning Commission*, 160 Conn. 239, 246, 278 A.2d 766 (1971). 'We interpret an enactment to find the expressed intent of the legislative body from the language it used to manifest that intent. . . . Zoning regulations, as they are in derogation of common law property rights, cannot be construed to include or exclude by implication what is not clearly within their express terms.' . . . *Planning & Zoning Commission* v. *Gilbert*, 208 Conn. 696, 705, 546 A.2d 823 (1988). The words used in zoning ordinances are to be interpreted according to their usual and natural meaning and the regulations should not be extended, by implication, beyond their expressed terms. *Schwartz* v. *Planning & Zoning Commission*, [supra, 153]." *Coppola* v. *Zoning Board of Appeals*, 23 Conn. App. 636, 640–41, 583 A.2d 650 (1990).

Prior to 1985, the plaintiffs and their predecessors in interest operated valet parking businesses in the town. In 1985, the commission imposed a moratorium on valet parking in the town, which it had authority to do for a limited duration to provide time in which to evaluate the needs of the town and to develop a plan for future growth. See *Arnold Bernhard & Co.* v. *Planning & Zoning Commission*, 194 Conn. 152, 160, 479 A.2d 801

(1984). In 1987, the commission adopted chapter IV of the zoning regulations, which sets forth the uses of land permitted in the town. Chapter IV does not include valet parking as a use of land permitted in the town. Therefore, at that time, the plaintiffs' valet parking businesses became a nonconforming use of their land. See *Petruzzi* v. *Zoning Board of Appeals*, 176 Conn. 479, 480–83, 408 A.2d 243 (1979).

"[I]t is the 'indisputable goal of zoning to reduce nonconforming to conforming uses with all the speed justice will tolerate.' *Blum* v. *Lisbon Leasing Corporation*, 173 Conn. 175, 181, 377 A.2d 280 (1977)." *Helbig* v. *Zoning Commission*, supra, 185 Conn. 306. There is no evidence, however, in the present case that the commission is attempting to reduce the nonconforming use of valet parking in the town. While "[t]he accepted policy of zoning . . . is to prevent the extension of nonconforming uses"; (internal quotation marks omitted) id., 306; legally existing nonconforming uses are property rights vested in the land. *Petruzzi* v. *Zoning Board of Appeals*, supra, 176 Conn. 483. "[T]he rule concerning the continuance of a nonconforming use protects the 'right' of a user to continue the same use of the property as it existed before the date of the adoption of the zoning regulations." *Helbig* v. *Zoning Commission*, supra, 306. The plaintiffs presented no evidence that the commission has taken any action to deny the plaintiffs their right to use their land for valet parking.

In 1990, the commission amended the town's zoning regulations by adding two sections that permit the adaptive reuse of property. The commission was entitled to do so pursuant to its legislative power. See *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, supra, 220 Conn. 527. Section 408 is at issue here. We look to the language of the regulation to determine the intent

of the commission. See *Coppola* v. *Zoning Board of Appeals,* supra, 23 Conn. App. 640–41.

Section 408 begins, "[I]n the Industrial 1, 2 and 3 zones only, the Commission may permit by Special Permit after a public hearing the rehabilitation or adaptive reuse of vacant, deteriorated or underutilized buildings in accordance with the following regulations . . . ." Giving the words of that section their usual and natural meaning; see *Coppola* v. *Zoning Board of Appeals,* supra, 23 Conn. App. 640–41; it is clear that § 408 applies to *buildings* only, specifically buildings that are vacant, deteriorated or underutilized. We recognize the multiple problems that the blight of vacant and underutilized buildings presents to landowners and towns. Therefore, we conclude that it was within the legislative powers of the commission to amend the town's zoning regulations to address the changing needs of the town. See *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* supra, 220 Conn. 543.

To obtain a special permit pursuant to § 408, applicants must meet the criteria identified in part A.[6] See *Housatonic Terminal Corp.* v. *Planning & Zoning Board,* 168 Conn. 304, 307, 362 A.2d 1375 (1975). The fifth criterion requires "[s]ubstantial inability to utilize the property under the provisions of the industrial zoning districts." That criterion requires applicants to demonstrate that the zoning regulations prevent them from using their buildings.

Part B of § 408 identifies the uses allowed under a special permit: "For purposes of this section, the Commission may permit any use which it determines is consistent with the criteria set forth above, even if said use is not otherwise permitted in Chapter IV of these Regulations, except that residential uses and retail

[6] See footnote 4.

package stores are expressly prohibited." The plaintiffs take exception to the "any use" provision of part B. The plaintiffs' position is not logical. To determine the intent of § 408, "we must consider the statute as a whole when reconciling its separate parts in order to render a reasonable overall interpretation." (Internal quotation marks omitted.) *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities,* 236 Conn. 681, 689, 674 A.2d 1300 (1996).

If one of the criteria that applicants for a special permit must meet is a substantial inability to utilize their buildings under the provisions of the industrial zoning districts, then some exception to the zoning regulations must be granted in order to allow the special permit. Chapter IV, which identifies the permitted uses of land, applies to the uses of industrial zoning districts. If the reason applicants cannot use their buildings is because an available use is not permitted, then in order for § 408 to be effective, it must permit *any* use of the buildings as long as it is not a residential use or a retail package store. Pursuant to its legislative powers, the commission has the authority to determine whether applicants satisfy the criteria and whether the proposed uses are consistent with them.

The intervening defendants took advantage of § 408 to find a use for their vacant building on Ella Grasso Turnpike. They do not provide outdoor valet parking. The plaintiffs own or rent land on which they conduct their valet parking business outdoors. The commission's granting of a special permit and the amendment to it does not affect the plaintiffs' ability to use their land. While the plaintiffs do not have a vacant building on their property that meets the criteria of § 408, there is nothing in the zoning regulations that prohibits them from acquiring such a building and using it for valet parking.

The plaintiffs presented no evidence that the commission's granting an amendment to the intervening defendants' special permit prohibits the plaintiffs' continued nonconforming use of their property. Because they are not denied the nonconforming use of their property, the plaintiffs' interest in the granting of the amendment to the intervening defendants' special permit is no different from that of any other landowner in the town, except that it provides legal business competition, which, as a matter of law, is insufficient aggrievement. Therefore, the plaintiffs have failed to demonstrate a specific personal and legal interest in the granting of the amendment, which is the first prong of the test of classic aggrievement. For that reason, they have no standing to challenge the commission's granting the amendment to the intervening defendants' special permit.

The judgment is reversed and the case is remanded with direction to dismiss the plaintiffs' appeal.

In this opinion the other judges concurred.