[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative or record appeal by the plaintiffs, Barbara Denson and other residents of New Canaan, from a decision of the defendant, the Planning Zoning Commission of the town of New Canaan (Commission). The Commission granted a special permit to the co-defendant, New Canaan Teen Center, Inc. (Teen Center), to construct a teen center at the site of the former municipal garage behind and to the west of the Town Hall at 77 Main Street in New Canaan.
The subject premises consists of approximately three acres in the B Residence zone. The site is occupied by the Town Hall and an existing town garage, which together comprise about 9.3 per cent of the lot area. The application was signed by the first selectman of the town of New Canaan because it involved town-owned property. The proposal constituted a "municipal improvement" which was approved previously by the defendant Commission pursuant to General Statutes § 8-24.
The application stated that the existing town garage could be used to house the teen center by putting a second story on top. CT Page 14047 However, it was subsequently determined that a new two-story building of approximately 4,000 square feet was required to be built on the site of the former garage. The purpose of the application is to provide a place for social activities for teenagers after school and on Saturdays. There are currently three connected parking areas on the site, including 134 spaces in the upper lot for commuters, 55 metered spaces in the middle section, and a lower lot of 61 spaces for town employees and visitors.
The B residence zone permits, as a matter of right, "[s]ocial, cultural and recreational uses serving a community need or convenience and not including any activity carried on primarily for profit." Section 60-4.1(I) of the New Canaan Zoning Regulations (regulations). The uses, however, are subject to obtaining a special permit after a public hearing in accordance with § 60-4.2 of the regulations. According to that latter section, there are certain "standards" that the Commission shall apply in passing on an application, including the requirement that the use shall be in harmony with the orderly development of the neighborhood, not impair the value of the surroundings, provide adequate parking and screening from adjacent residential use, prevent adverse impact upon the neighborhood from lights and noise, not adversely affect safety in the streets or cause traffic congestion, and enhance natural resources. Additional conditions may be imposed to observe the "spirit" of the regulations and that "public safety and welfare [be] secured or substantial justice done."
The Commission held a public hearing on May 20, 1997, as required by General Statutes § 8-3(b), on the Teen Center's application, and on July 22, 1997, the Commission granted the request for a special permit and the accompanying site plan by an 8 to 1 vote. On August 26, 1997, the Commission reconvened to impose a number of conditions relating to hours of use, lighting, noise, security, setbacks, height and capacity. The Commission also ruled that all parking for the teen center would be located to the west of the facility toward Park Street, and not in the Town Hall parking lot. This vote was unanimous.
The plaintiffs appealed the decision of the Commission to this court in accordance with General Statutes § 8-8(b). The plaintiffs allege in their appeal that in granting the special permit and accompanying site plan, the Commission acted illegally, arbitrarily and in abuse of its discretion. The CT Page 14048 plaintiffs further allege that they are aggrieved by the Commission's approval of the Teen Center application because the proposed use will result in excessive noise and increased traffic in the area in which they reside.
General Statutes § 8-8(b) provides that "any person aggrieved by any decision of a board may take an appeal" to this court. Proof of aggrievement is essential to a court's jurisdiction of a zoning appeal. Northeast Parking, Inc. v.Planning Zoning Commission, 47 Conn. App. 284, 287,703 A.2d 797 (1997). An "aggrieved person" is defined in § 8-8(a)(1) as "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."
At a hearing before this court on August 25, 1998, the named plaintiff, Barbara Denson, demonstrated that she and the other plaintiffs[1] owned property within 100 feet of the subject premises. The defendants agreed that the plaintiffs were statutorily aggrieved. The court therefore has subject matter jurisdiction over this appeal.
The plaintiffs, in their brief, raise just one issue concerning the Commission's decision. They claim that the Commission should have ordered a professional traffic study relative to off-street parking. This contention is based on § 60-4.2(H) of the regulations, which is one of the standards that is to be applied by the Commission in ruling on applications for special permit. This section states as follows: "[A] proposed use containing a gross floor area of more than ten thousand (10,000) square feet or containing more than thirty (30) parking spaces or which, in the Commission's judgment, could generate high levels of traffic shall be required to provide a quantitative analysis of traffic, as provided for in § 60-3.6F, Traffic analysis requirements."
The standard of review by this court in connection with the granting of a special permit was recently set forth by the Supreme Court in Irwin v. Planning Zoning Commission,244 Conn. 619, 711 A.2d 675 (1998),[2] which makes the following points: (1) the special permit process is "discretionary" and not "purely ministerial;" Id., 626-27; (2) general considerations including "public health, safety and welfare" may be considered, as well as whether there will be "parking or traffic congestion" adversely affecting the neighborhood; Id., 627; (3) the issue for the trial CT Page 14049 court is to determine whether the Commission "correctly interpreted" the regulations and applied the relevant section to the facts "with reasonable discretion;" Id., 627-28; (4) in ruling on a special permit, the agency is acting in an administrative capacity and is "endowed with a liberal discretion;" Id., 628; (5) the only issue for the court to decide is whether the agency action was "unreasonable, arbitrary or illegal;" Id., 628; (6) although if the application meets all the standards the Commission must grant the application, the agency has the discretion "to determine whether the proposal meets the standards set forth in the regulations;" (emphasis in original)Id., 628; (7) the agency must not construe the regulations "beyond the fair import of their language;" Id., 629; (8) if the agency states the reasons for its action, the court's task is to "simply" determine "whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations;" Id., 629; (9) the court cannot substitute its judgment for that of the agency with respect to "factual questions," or the weight of the evidence "[i]f there is conflicting evidence in support of the zoning commission's stated rationale;" Id., 629; and (10) the decision of the agency is to be affirmed "if an examination of the record discloses evidence that supports any one of the reasons given;" Id., 629.
The sole remaining issue in this case is whether the defendant Commission correctly interpreted § 60-4.2H. The proposed teen center building does not contain a gross floor area of more than ten thousand (10,000) square feet. The only question is whether the proposed use "contain[s] more than thirty (30) parking spaces." The other part of the regulation, which gives the Commission the discretion to require a "quantitative analysis of traffic" if "high levels of traffic" are expected, is not applicable because the Commission obviously decided there would not be such levels. This regulation also makes reference to § 60-3.6F regarding a "quantitative analysis of traffic" to be prepared by a "qualified traffic engineer." Again, this section is confined to uses containing more than 10,000 square feet of gross floor area or any development which could generate high levels of traffic "in the Commission's judgment."
In terms of parking, the plaintiffs claim that the proposed use will require 56 parking spaces, which if true, would require a professional traffic study, which admittedly was not submitted to the Commission. The figure of 56 parking spaces comes from a CT Page 14050 combination of restaurant use and a place of assembly. For a restaurant, one parking space is required for every 100 square feet of gross floor area (§ 16-17.3H), and one space is required for every five seats in a place of assembly. (§ 60-17.3C).
The proposal by the Teen Center, however, envisages only a small snack bar, not a restaurant, and moreover, the proposed building does not have any permanent seating. The defendants argue plausibly that they should not be required to comply with the parking requirements for a restaurant or place of assembly as urged by the plaintiffs.
Off-street parking requirements are set forth in § 60-17.3 of the regulations. There are no specific requirements for a teen center and subsection O provides that "for any use not enumerated in this section, the required off-street motor vehicle parking facilities . . . shall be determined in each case by the Town Planning Zoning Commission, which shall be guided in its discretion by the requirements of this section applicable to comparable uses."
According to the record, there are 61 parking spaces available in the vicinity of the proposed teen center. The defendants contend that only 21 parking spaces would be required, based on one space for every 200 square feet on the first floor and one for every 270 feet on the second floor, which is the standard for retail and business uses, banks and offices. (§ 60-17.3J). The defendants contend that these uses, rather than a restaurant or a place of assembly, are more appropriately the "comparable uses" referred to in § 60-17.3O.
The Commission, in effect, agreed that a professional parking analysis was not required because the number of parking spaces needed was not more than 30 spaces, and that the plaintiffs' contention that the applicable standard for parking was that required for restaurants and places of assembly was flawed. The construction placed upon a statute or regulation by the agency responsible for its enforcement and administration is entitled to great deference. Griffin Hospital v. Commission on Hospitals Health Care, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed,479 U.S. 1023, 107 S.Ct. 781, 93 L.Ed.2d 819 (1986).
Moreover, the defendants point out that the teen center would be used primarily by those who would not drive and park a car, or CT Page 14051 by those who would arrive in groups under a car-pooling arrangement. As for evening events where more people would be expected, the records reflects that there would be plenty of parking in the upper two lots.
In summary, a teen center is a permitted use in the zone where the subject property is located, provided special permit approval is granted by the Commission. Certain standards are established for the granting of special permits, and the defendant Commission concluded that the application complied with these special permit standards.
It is axiomatic that in an administrative appeal, a plaintiff has the burden of proving "that substantial evidence does not exist in the record as a whole to support the agency's decision."Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587,628 A.2d 1286 (1993). For the reasons stated above, the plaintiffs in the present case have not sustained their burden. Accordingly, the decision of the defendant Commission is affirmed because its action is adequately supported by the record. The appeal of the plaintiffs is therefore dismissed.
Costs are to be taxed by the office of the chief clerk in accordance with General Statutes § 52-257 and Practice Book (1998 Rev.) § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 11th day of December, 1998.
William B. Lewis, Judge