[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The above referenced cases were not formally consolidated, but both cases were heard together and are addressed in this memorandum of decision.
These cases involve decisions of the defendant, Zoning Board of Appeals, denying the plaintiff's application for variances for its property located in Bloomfield, Connecticut.
In docket number cv 98 0489071, the plaintiff's application was for a use variance for a "hotel-conference center." The defendant, Zoning Board of Appeals ("Zoning Board"), held a hearing on June 1, 1998 and voted to deny the application.
The plaintiff, on or about June 12, 1998, filed an application for the same property for a "guest house [4 bedrooms] and conference center" use variance. The Zoning Board similarly, after public hearing, denied this application. This second application is the subject of the appeal in docket number cv 98 0489461.
The property at issue consists of a Victorian style house, outbuildings including a large barn situated on approximately 3 acres. It is located adjacent to a golf course, Tumblebrook Country Club, and a corporate headquarters, Connecticut General Insurance Company ("CIGNA"). The property is located in a R-30 residential zone. The R-30 residential zone is primarily for single family residences. The R-30 residential zone allows for extensions of existing cemeteries, certain agricultural uses, farm markets and by special permit golf courses and their accessory uses. Bloomfield has had zoning since 1950 and the CT Page 14759 property has at all times been within the residential zone. Effective on December 4, 1997, the Bloomfield zoning regulations were amended to remove country clubs as a permitted R-30 residential zone use.
The subject property was a two family house when purchased by the Brown family in the 1940's. The Brown family converted the Victorian style home into a single family residence and used the barn structure for a business enterprise. An office was also maintained within the home. The property was used as a residence until sold to CIGNA in 1982. CIGNA used the property to house visitors who were employees or visitors related to the business. The property was also used by CIGNA for various group meetings: Bloomfield Chamber of Commerce, Bloomfield Town Council, various charitable organizations.
The plaintiff's main argument is that the use it proposes for the property continues a pre-existing, legally nonconforming use. The plaintiff's plans for the property are to use it to host business meetings and wedding receptions, etc. The four bedrooms within the house would be used as guest residences. The plaintiff has incorporated a non-profit country club which would lease the property from the plaintiff, who would profit from such lease arrangements.
The evidence does not support the plaintiff's claim that the property is a nonconforming use.
Legally existing nonconforming uses are property rights vested in the land and the right of a user to continue the same use of the property as it existed before the date of the adoption of zoning regulations. Petruzzi v. Zoning Board of Appeals,176 Conn. 479, 483 (1979); Helbig v. Zoning Commission,185 Conn. 294, 306 (1981); Northeast Parking, Inc. v. Planning ZoningCommission, 47 Conn. App. 284, 294 (1997), cert. denied,243 Conn. 969 (1998).
The evidence establishes that Bloomfield enacted zoning regulations in 1950 at which time the subject property was being used by the Brown family as a single family residence. It continued primarily for such use until 1982. The business related uses of a portion of the premises which did in fact exist in 1950, were ancillary uses to the occupation by the residents as a single family home. This is especially the case in view of the fact that the evidence established that the Brown family had CT Page 14760 variances for limited times related to its business use of the barn area. The uses of the property by CIGNA after 1982 do not establish a legal nonconforming use. The use had to be in effect at the time of the enactment of zoning regulations, which in this case was 1950.
The plaintiff has failed to establish that the property had a use in 1950 as a hotel or guest house/conference center. The plaintiff is thus not entitled to such use on the basis of a history of a legal nonconforming use.
The plaintiff also challenges the validity of the zoning regulations because of an alleged failure to provide in the period of 1950 to 1976 for a provision related to the continuation of valid nonconforming uses.
The continuance of a nonconforming use is protected by General Statutes § 8-2 which provides, with respect to zoning, that: "Such regulations shall not prohibit the continuance of any nonconforming use, building or structure existing at the time of the adoption of such regulations." The plaintiff is unable to cite any authority for his proposition that the absence of a similar provision in the Bloomfield zoning regulations can somehow create a nonconforming use where the factual history does not support such a conclusion.
The plaintiff's nonconforming use claim would also fail since it would involve a substantial extension of the use which the property was put to formerly. The Brown family used the property as a residence with a home office and commercial use of the barn building. The plaintiff proposes to use the house as a guest house/hotel/conference center. It would be a substantial extension over the ancillary commercial use of a single family residence for which the Brown family used the property. Similarly, the CIGNA use of the property was not demonstrated to be a for profit enterprise. It was primarily for the accommodation of its employees and was occasionally made available to local and charitable institutions. There is no evidence that such use was for a profit motivation by CIGNA. In any event, the CIGNA use could not amount to a legal nonconforming use since it occurred thirty-two years after the adoption of the Bloomfield zoning restrictions.
The plaintiff further argues that the zoning regulations which were amended in December of 1997 and removed country club CT Page 14761 from the uses of R-30 residential zone, were not applicable to him. This is based on an estoppel argument. The basis of the estoppel argument is that the old zoning regulations were disseminated to him on and after the times related to his purchase of the property and application for the variances.
The plaintiff fails, however, to attack the underlying validity of the zoning regulations which were of record and presumed to be controlling. The zoning regulations were adopted just weeks before the purchase of the property. Since the regulations were properly promulgated and noticed, the plaintiff fails to demonstrate any detrimental reliance. The plaintiff also fails to cite any authority for the proposition that the alleged dissemination of the old zoning regulations estops the town from enforcing the valid regulations. The plaintiff cites authority for the proposition that damage claims may be pursued on such a theory, but no authority that the court can authorize a use which validly enacted zoning regulations specifically prohibit.
Accordingly, the decisions of the Zoning Board is approved and the appeals are hereby dismissed.
Robert F. McWeeny, J.