[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Richard Henry, appeals from a decision of the defendant, planning zoning commission of the city of Ansonia. The commission approved a site plan which allows the defendant, which has been operating a "Stop and Shop" to open and operate a gas station on the Stop Shop property which is owned by Ansonia Shopping Center Associates, located at 100 Division Street. Henry is the owner of property, also in Ansonia, on which a former corporate plaintiff, Riverview Super Service, Inc.,[1]
operates a gas station. Riverview Super Service, Inc. is owned and operated by Henry. This property is located at 630 Main Street, Ansonia, Connecticut, approximately four to five hundred feet, as the crow flies, from the proposed Stop and Shop gas station and across the Naugatuck River. Henry appeals the decision of the commission, alleging that he is aggrieved in that the value of his real property will be substantially diminished as a result of the commission's decision.[2]
The court heard testimony solely on the issue of classical aggrievement on January 10, 2000, February 7, 2000, March 2, 2000, and March 3, 2000, with closing arguments heard on May 3, 2000. The plaintiff offered his own testimony, as well as the testimony of James Ford, a professional engineer specializing in traffic engineering, Bruce Butler, a former plaintiff and a gas station owner, and Donald Kotas, president of a consulting engineering firm. Kotas is not a traffic expert or a professional engineer. Ford reviewed the studies prepared in support of Stop and Shop's application and submitted a report based upon this review. Stop and Shop offered the testimony of Bruce Hillson, a civil engineer specializing in traffic engineering.
There are two forms of aggrievement: statutory aggrievement and classical aggrievement. Henry has not alleged statutory aggrievement. He is not an abutter. There is a two-prong test for classical aggrievement. CT Page 6595 One, the plaintiff "must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole," and two, the plaintiff "must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) Northeast Parking, Inc. v. Planning Zoning Commission,47 Conn. App. 284, 288, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969,707 A.2d 1269 (1998).
"[I]n considering whether a plaintiff's interest has been injuriously affected by [an administrative decision], we have looked to whether the injury he complains of (his aggrievement, or the adverse effect upon him) falls within the zone of interests sought to be protected, by the statutory provision whose violation forms the legal basis for [its] complaint." (Brackets in original.) Northeast Parking, Inc. v. Planning Zoning Commission, supra, 47 Conn. App. 288-89. "Ordinarily an allegation of adverse business competition is not sufficient to meet the classic aggrievement test. . . . The court will, however, assume jurisdiction over claims of unfair or illegal competition." Id., 289.
Henry first argues that the traffic circulation into, and within, the Stop and Shop complex establishes aggrievement because there will be fewer parking spaces and delivery trucks will have difficulty maneuvering within the parking area. According to reviewer Ford's testimony, left turns from Division Street into the Stop and Shop complex, and left turns out of the complex onto Division Street, are prohibited, yet left turns into the Stop and Shop complex were occurring in a significant amount. (2/7/00 Transcript, p. 14.) According to Hillson's testimony, however, Stop and Shop's plan, as currently approved by the commission, allows for left turns off of Division Street into the site. (2/7/00 Transcript, p. 175.) According to Ford's testimony, he had some concerns about parking impact. (2/7/00 Transcript, p. 21.) He testified during cross-examination that a loss of twenty-four parking spaces was anticipated. (2/7/00 Transcript, p. 55.) Ford also testified that "one of the things we had noted relating to the site plan and this was based on observations, was the difficulty that larger commercial vehicles had accessing the site through the Hershey Drive location. While we did not specifically review . . . how vehicles would proceed from the pump islands to deliver product to the site. Based on observations of a semi-trailer actually having to back up in order to make it through that driveway when I was there, we suggested that there might be some difficulty in that area." (2/7/00 Transcript, pp. 21-22.) Ford also testified that "[t]he question that I raised and the concern I expressed was the ability of a vehicle to physically make this maneuver to get in a position to deliver to the underground tanks . . . My concern was that . . . a tanker, turning in CT Page 6596 and coming in here would be in a situation where it would become a difficult maneuver." (2/7/00 Transcript, pp. 22-23.) Henry must, however, provide evidence of how he has a specific personal and legal interest in the traffic issues within the Stop and Shop complex, as distinguished from a general interest, such as is the concern off all members of the community as a whole. Northeast Parking, Inc. v. Planning ZoningCommission, supra, 47 Conn. App. 288. Henry has not provided the evidence that would indicate his specific personal and legal interest in the traffic circulation into and within the Stop and Shop complex, the availability of parking, or fuel deliveries to Stop and Shop. In fact, Ford testified during cross-examination that he did not anticipate that the issues involving internal circulation and fuel deliveries would have any off-site impact. (2/7/00 Transcript, p. 58.)
Henry also argues that the difficulties with fuel deliveries to the Stop and Shop gas station that arise out of the design of the Stop and Shop project establish aggrievement. Mr. Kotas testified that an oil tanker will have difficulty delivering fuel to the gas pumps in that the tanker will have to drive over the curbs and drive over other peoples' properties. (3/2/00 Transcript, p. 75.) Again, Henry must, however, provide evidence of how he has a specific personal and legal interest in this, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Northeast Parking, Inc. v.Planning Zoning Commission, supra, 47 Conn. App. 288. Henry has not provided the evidence that would indicate his specific personal and legal interest in the fuel deliveries to the Stop and Shop gas pumps. To the contrary, Henry and his attorney, Ian Cole, concedes that this is a concern for everybody. "I think it's a concern to everybody in the Stop and Shop plaza. I don't know how far a fireball would go." (Cole's statement, 2/7/00 Transcript, p. 91.) "Yes, it does come into play if there's a major problem down at that location. It reflects on all the service stations. They may enact new rules. . . ." (Henry's testimony, 2/7/00, p. 94.) It is not that an item of arguably general concern is a disqualified to the plaintiff, rather it is, of course, that such is not enough.
The plaintiff also contends that the increased traffic generated on the roadway by the proposed gas station establishes his aggrievement. He argues that there will be increased traffic on the roadway and that this will result in longer traffic delays and increased congestion.[3] Henry testified that people will not come to his business because they will be frustrated by the traffic congestion. (2/7/00 Transcript, p. 102.) The evidence, however, does not support this. The testimonial evidence from Hillson indicates that the traffic will improve, not worsen, in light of a state road improvement project. (2/7/00 Transcript, p. 185.) According to Hillson's testimony, the state is widening the roadway so that the CT Page 6597 traffic congestion decreases and "the average delay will be less than what was experienced in [1997]. And that's with the added traffic from Stop and Shop's gasoline pumps." (2/7/00 Transcript, p. 185.)
Additionally, Henry's property is not even on the same road as the Stop and Shop. Henry's property is located at 680 Main Street, approximately four to five hundred feet away from the Stop and Shop site which is located at 100 Division Street. There is no evidence of the impact, if any, on the intersection at Division Street and Main Street, the intersection closest to Henry's property. In fact, during cross-examination, Ford testified that he did not do an analysis of the traffic at the intersection of Division Street and Main Street. (2/7/00 Transcript, p. 41.) Henry conceded during cross examination that there is an alternative route to his property that would avoid the Stop and Shop site. (2/7/00 Transcript, p. 101.) "[T]he plaintiffs have not articulated how the potential traffic problems affect their property any more or differently than traffic may affect other property located in the area of the renovation. Any potential increase in traffic hazards or congestion feared by the plaintiffs would also impact other businesses along [the street], as well as any person traveling on [the street]. . . . The plaintiffs' concern regarding a potential increase in traffic problems on [the street] does not constitute a specific, personal and legal interest in the subject matter of the decision that is distinguishable from the concerns of all members of the community." Queen Street Mobil v.Southington Planning Zoning, Superior Court, judicial district of New Britain, Docket No. 498474 (December 20, 1999, Hartmere, J.).
Henry cites to Gregorio v. Zoning Board of Appeals, 155 Conn. 422,232 A.2d 330 (1967), in support of his argument that traffic congestion is sufficient to establish aggrievement. Gregorio, however, is distinguishable from the present case. In Gregorio, the trial court found that the plaintiff was aggrieved based upon the location of the plaintiff's gas station relative to the proposed station. Id., 425. InGregorio, the plaintiff's property was directly across the street and less than 100 feet from the proposed station. The Supreme Court determined that the trial court's finding of aggrievement was not in error. Henry's property is down the block, down another street, and across the river. In addition, there is testimony that the level of service on the street, as compared to the present level, will improve because of the state road improvement project. (2/7/00 Transcript, p. 185.)
There is no evidence of diminution in Henry's property value. There has been no appraisal to demonstrate a lowering of the property value. Furthermore, "diminution of real estate values from a proposed large development has been held too speculative and general to support CT Page 6598 classical aggrievement." West Norwalk Assoc. v. Conservation Commission, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 165846 (June 17, 1999, Tierney, J.). Henry did testify that he "will lose at least twenty five per cent of the gasoline sales and probably another twenty five per cent on repair sales." (2/7/00 Transcript, p. 108.) He argues that this would be as a result of the Stop and Shop project. "In fact the cases have held that loss of property value due to the increased competition brought about by zoning authority action will not provide the basis for aggrievement. . . ." Henry v. Planning ZoningCommission, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 64922 (March 31, 1999, Corradino, J.) (24 Conn.L.Rptr. 345, 349 n. 3).
Henry also argues that the anticipated "below cost" price of the gasoline at the Stop and Shop establishes aggrievement. "Ordinarily an allegation of adverse business competition is not sufficient to meet the classic aggrievement test. . . . The court will, however, assume jurisdiction over claims of unfair or illegal competition." NortheastParking, Inc. v. Planning Zoning Commission, supra,47 Conn. App. 288-89. "The fact that the proposed gasoline station would result in competition harmful to the plaintiff's business would not be sufficient to qualify the plaintiff as an aggrieved person." Gregorio v. Zoning Board of Appeals, supra,155 Conn. 426. "The law has long recognized that the existence of competing private enterprise facilities are in the public interest. It is the exclusion of competition rather than the acceptance of competition which is detrimental to the public interest." Hanson v. Glastonbury TownCouncil, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 521154 (May 5, 1994, Sullivan, J.). The plaintiff has presented no evidence to support his argument that Stop and Shop sells or will sell the gasoline at below cost. Henry testified that Stop and Shop, at their other locations, sells gasoline at a price less than other gas stations. (2/7/00 Transcript, p. 86.) Butler also testified that another Stop and Shop typically sells gasoline at ten cents under the market. (2/7/00 Transcript, p. 127.) He argues that "Connecticut has a long history of prohibiting `loss leader' sales practices." (Henry's posttrial brief, April 4, 2000, p. 10.) He cites to General Statutes § 42-114, and argues that, although it was repealed in 1963, its provisions and policies were preserved with the enactment of the Connecticut Unfair Trade Practices Act and the Connecticut Antitrust Act. But Henry has presented no evidence that Stop and Shop is selling the gasoline at below cost. Selling at a price less than others is not necessarily selling at below cost.
This court holds that Henry has not met the test for classical aggrievement. He has failed to demonstrate a specific personal and legal CT Page 6599 interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. He has also failed to establish that this specific personal and legal interest has been specially and injuriously affected by the decision in a way cognizable by law.
It may well be so that Mr. Henry represents yet another sad illustration of the small local operator who is to be devoured by the multiple-location giant. If this is regrettable, as many if not most would contend, the remedy lies at the most basic level of zoning "legislation" and with the electorate. The law ought not to be twisted and tortured toward a desirable result through convoluted logic and almost baseless conclusory arguments.
The appeal is therefore dismissed.
The Court
By ____________________
Nadeau, J.