[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Arthur Bennett appeals from a decision of the Town of Newtown Zoning Board of Appeals ("ZBA") denying his appeal from a cease and desist order issued by Newtown's Zoning Enforcement Officer ("ZEO"). The order alleged that Bennett was in violation of the Newtown Zoning Regulations in that there was repair and storage of a school bus/limousine fleet currently located at 47 Platts Hill Road in Newtown on Bennett's property which is located in a residential zone. The ZEO's order required Bennett to cease the storage and repair of the described vehicles. (Return of Record ("ROR") Item 15, Ex. 33.)
The ZBA's denial of Bennett's appeal was issued on July 21, 1999, and notice was published on July 30, 1999. (ROR Items 8, 9.) Bennett served his appeal on the Town of Newtown, the ZEO, and the ZBA in a timely fashion on August 12, 1999. The appeal to the Superior Court was taken CT Page 15107 pursuant to General Statutes § 8-8. On December 6, 1999, the motion of Clara Miller, Paul Knapik, Anthony Bonacci and William Leinert to intervene in the Superior Court proceedings as defendants was granted.
 I JURISDICTION
The plaintiff Bennett is the owner of the property affected by the ZBA's action and is an aggrieved party. General Statutes § 8-8;Winchester Woods Associates v. Planning Zoning Commission, 219 Conn. 303
(1991). Since aggrievement has been found and the appeal timely, this court has jurisdiction over the matter.
 II FACTS
Bennett has owned the premises known as 47 Platts Hill Road since 1952. (ROR Item 6, Transcript ("Tr.") p. 9.) That property and surrounding areas was primarily used as an operating dairy farm during the 1950s and 1960s. (Tr. p. 21.) At the ZBA hearing, Bennett testified that during the 1957-58 school year, his wife Susie transported their son, Greg, to classes at Southbury Training School. This was done in the Bennetts' station wagon. Sometime later during that school year, the Newtown Board of Education asked if Mrs. Bennett could also transport another Newtown child to Southbury at the same time. Bennett testified that he responded, "yes, we would . . . [b]ut I need help. Financially. To which they agreed to do." (Tr. p. 16.) According to Bennett, that was the start of the school bus operation. (Tr. p. 25.)
On August 25, 1958, zoning regulations for the area including 47 Platts Hill Road went into effect making it a farming, residential area. (ROR Item 15, Frenette Memo.) In the 1960s, and forward, the Newtown Board of Education made arrangements with the Bennetts for transporting school children, and a series of contracts to this effect were written and executed, some covering as long as five years. (ROR Item 17.) In 1988, Bennett subdivided some 88 acres he owned and sold off certain plots. However, he retained the lot known as 47 Platts Hill for his residence. At the present time, Bennett owns and operates a school bus transportation business and a limousine service. Bennett, through S.L. Bennett Transportation Company, owns ten Type II yellow school buses (often referred to "mini-buses"). He has separate contracts with the Board of Education for eight of the vehicles, and he hires the drivers to operate them. Four of the buses are kept on Bennett's property at all times when not on the road. The six other mini-buses are usually kept at CT Page 15108 the employee-drivers' residences when not in use during the school year. All the vehicles go to 47 Platts Hill Road for routine maintenance, and all are kept on the Bennett premises during the summer months for rebuilding, repair and maintenance work which can take up to one month per bus. (Tr. pp. 53-55.). Bennett testified that the storage and maintenance of those vehicles is done in the same "courtyard" area where the family and farm vehicles were stored and maintained in the 1950s. (Tr. pp. 56-57.)
In 1988, Bennett acquired a limousine service known as Cars by Crisci. Presently, at least two limousines are kept and serviced at the Bennett residence. At the trial of this appeal, counsel for Bennett withdrew that portion of the appeal relating to the cease and desist order affecting the limousines operated under the Cars by Crisci name.
The plaintiff claims that the storage and service of the school buses on his property is a legal non-conforming use of his property which existed prior to the adoption of zoning regulations. He further claims that the storage and maintenance of school buses is a permitted use allowed by the zoning regulations to exist in a residential area.
 III STANDARD OF REVIEW
When a zoning board of appeals determines an appeal from an order of a zoning enforcement officer, it does so on a de novo basis. Caserta v.Zoning Board of Appeals, 226 Conn. 80 (1993). On an administrative appeal from a board's action, the Superior Court's review is limited. Where a board has officially set forth the rationale for its decision, the Superior Court may not search the record for other reasons, but may only determine whether the reasons stated are reasonably supported by the record. Molic v. Zoning Board of Appeals, 18 Conn. App. 159 (1989). The board's decision must be upheld if one of the reasons is found valid.Beit Havurah v. Zoning Board of Appeals of Town of Norfolk, 177 Conn. 440
(1979). The court's function is to determine from the record whether substantial evidence supports the board's findings. Conetta v. ZoningBoard of Appeals, Stamford, 42 Conn. App. 133 (1966) (citing Huck v.Inland Wetlands Watercourses Agency, 203 Conn. 525 (1987)). Substantial evidence is something less than preponderance of evidence. Evidence from which one could reasonably draw two inconsistent conclusions may still meet the substantial evidence test. Huck v. Inland Wetlands Watercourses, supra; see also Kaufman v. Zoning Commission, 232 Conn. 122,151-152 (1995); DeBeradinis v. Zoning Commission, 228 Conn. 187, 199
(1994). CT Page 15109
 IV DISCUSSION
Having set forth the above parameters, the court now turns to the ZBA's findings. The ZBA's denial of Bennett's appeal set forth three reasons for its decision:
 1. The subdivision of the property eliminated any allowance for any pre-existing, non-conforming condition in the residential zone because it would no longer be pre-existing.
 2. The use of a personal vehicle for defacto car pooling with mileage only reimbursed was not a business and therefore the change to a bus business and limousine business plus repairing was not a preexisting use and therefore not in conformity with the zoning regulations.
 3. There was a substantial difference from what was originally on the property and this change has had a substantial adverse impact on surrounding properties.
(ROR, Items 7, 8.)
 A The Subdivision
The first paragraph of the finding states in essence that the 1988 subdivision of Bennett's property eliminated his right to continue any pre-existing nonconforming use of the property. On appeal, the ZBA supports this reason by contending that the approval of the subdivision was based on the presumption that the land therein complied with all applicable zoning laws and regulations and that the subdivider is presumed to have discontinued or is estopped from continuing any non-conforming use. While the court might possibly agree that such a theory has some persuasive force, it finds no support for it in the statutes and Connecticut cases. The court holds that the first reason stated by the ZBA is an incorrect conclusion of law, and therefore it is rejected. SeeNortheast Parking, Inc. v. Planning Zoning Commission of WindsorLocks, 47 Conn. App. 284 (1997), cert. denied, 243 Conn. 969 (1998).
 B CT Page 15110 Non-conforming Use
Bennett argues in substance that the operation, garaging and maintenance of the school buses on his property is a legal non-conforming use because it was an ongoing use prior to the establishment of zoning regulations which affected his property in August, 1958. In this regard, he points to his testimony that money was paid by Newtown to him for the transportation of one or two children during the school year preceding August, 1958. (Tr. p. 16.) There is no documentary evidence of any such arrangement as early as that. Nevertheless, in its second reason for denying Bennett's appeal, the ZBA stated:
 2. The use of a personal vehicle for a de-facto car pooling with mileage only reimbursed was not a business and therefore a change to a bus business and limousine business plus repairing was not a preexisting use and therefore not in conformity with the zoning regulations.
Bennett contends that this is a finding of fact by the ZBA, and as such, should not be overturned on appeal. The court agrees and concludes that the ZBA found as a fact, based on the testimony of Bennett, that the use of a vehicle to transport one or more children to school did occur on the property prior to zoning, and that some payment for this transportation was received by Bennett.
The ZBA, however, concluded that the present business being carried on at the Bennett premises was not a legal non-conforming use, because as set forth above, there has been, in its words, a "change" and "substantial difference" in the activities on the Bennett property between the 1957-58 school year and now.
Broadly stated, the law of Connecticut recognizes and protects the rights of landowners who are legally using their property for a certain purpose prior to the implementation of zoning regulations which proscribe such use. See General Statutes § 8-2. Such uses are permitted to continue as protected "non-conforming" uses.
Plaintiff's counsel has carefully and intelligently fashioned arguments to persuade that the developments in Bennett's business and uses of his property fall within the generally recognized definition of an acceptable intensification, rather than an unacceptable expansion or extension of the pre-1958 use. It is argued that beginning with the arrangement by the Newtown Board of Education to assist the Bennetts financially in return for their transportation of a second child to Southbury Training School, the Bennett school "transportation service for pay started before zoning CT Page 15111 was effective, even though it was in a small way. That business grew in a natural evolution on the Bennett property thereafter." (Bennett Brief, p. 6.) Among other things, Bennett points out that payment on a mileage basis which was received in 1958 remains the basis for payment to S.L. Bennett Transportation today. (See Tr. p. 18 and ROR Item 17.) In addition, it is argued that the Bennett farm always had a lot of vehicles and that the buses are being serviced and maintained in the same "courtyard" area as the farm vehicles were being serviced before. (Tr. pp. 56-57.)
To be a pre-existing non-conforming use, the land use must have been a lawful use and in existence at the time of the zoning enactment making the use nonconforming. See Helicopter Associates, Inc. v. City ofStamford, 201 Conn. 700, 712 (1986). There is no question that the use of the Bennett's land to house and service a private vehicle used, inter alia, to transport one or more children to school was legal prior to August, 1958. For a use to be in existence at the time of a zoning change, it must be established that the premises were utilized for such use so as to be known in the neighborhood as employed for that purpose. Id., 713; Wallingford v. Roberts, 145 Conn. 682 (1958). If it is found that if a use existed which was nonconforming, it is a vested right. See General Statutes § 8-2.
The Newtown Zoning Ordinance prohibits the expansion or intensification of a non-conforming use above the level at which such activity existed on the date it became non-conforming. Newtown Zoning Regulations § 8.05.500. Local restrictive regulations such as Newtown's have been limited by Connecticut case law. Generally, "a mere increase in the amount of business done pursuant to a nonconforming use is not an illegal expansion. . . ." Helicopter Associates, supra, 716. "There must be a change in the character of the existing use in order to bring it within the prohibition of the zoning ordinance." Salerni v. Scheuy, 140 Conn. 566,571 (1954).
 In deciding whether the current activity is within the scope of a nonconforming use consideration should be given to three factors: (1) the extent to which the current use reflects the nature and purpose of the original use; (2) any differences in the character, nature and kind of use involved; and (3) any substantial difference in effect upon the neighborhood resulting from differences in the activities conducted on the property.
Zachs v. Zoning Board of Appeals, 218 Conn. 324, 332 (1991). CT Page 15112
Bennett attacks the ZBA's second finding in two ways. First, he contends that its description that the 1957-58 transportation arrangement was "defacto car pooling" is factually incorrect. Second, he argues that the characterization that the pre-zoning operation was "not a business" and the present activities were a "business" are conclusions not supported in the record. The court agrees that the phrase "de facto car pooling" does not accurately reflect the pre-zoning arrangement if only because the record reflects there was one driver (Mrs. Bennett) and one vehicle used (her station wagon). (Tr. pp. 15-16.)
However, a reviewing court should not hold a zoning board to perfect articulation, and the court finds that there is substantial evidence in the record to support the ZBA's finding that the pre-existing use was not a business, whereas the present use certainly is. The evidence in the record shows that in the school year immediately preceding zoning, the Bennett's son, Gregory, was enrolled at the Southbury Training School, and Mrs. Bennett drove him to school in the Bennetts' personal station wagon. (Tr. pp. 15-16.) Later in the school year, crediting the testimony of Bennett, the Newtown school board asked if Mrs. Bennett could drive another Newtown child to Southbury. The Bennetts agreed and were paid to do so. (Tr. p. 16.) No evidence is in the record that the Bennetts sought to make, or anticipated, a commercial profit. Indeed, Bennett's testimony is that he asked for "help" financially, indicating more likely an intent to defray the driving expense. This is also confirmed by Bennett's description that the payment from Newtown was "minimum," "it helped buy the gasoline." (Tr. p. 18.) Bennett did not purchase a specific vehicle nor even dedicate an existing vehicle for school transportation. The family station wagon continued to be used for regular family errands and transportation, some of which were accomplished during trips to or from Southbury. (See Tr. pp. 90, 97; two of the Bennett children testified that Mrs. Bennett would drop them off or pick them up from sports or school while driving to and from Southbury.) There is no evidence in the record that the Bennetts reported any business income or took any business deductions during 1957 or 1958.
In contrast, the record is clear that the Bennett school transportation operation today is a business. It was incorporated under the name S.L. Bennett School Transportation in 1981, has at least a half dozen employees, and presently holds multiple contracts with the Newtown Board of Education. (ROR Item 15, Ex. 36; Item 17.)
Putting aside the question of whether "business" is the appropriate nomenclature, the issue to be determined is whether the present use of the Bennett property is different in nature and character from the use that pre-existed the August, 1958 zoning enactments. See Zachs v. ZoningBoard of Appeals, supra; Salerni v. Scheuy, supra. The court holds that CT Page 15113 there is substantial evidence in the record to support the findings of the ZBA that the operations now at the Bennett property now constitute a substantial difference from the pre-zoning use, and these differences constitute a "change" in the nature and character of the use. Essentially, in the year prior to zoning, the Bennetts operated a dairy farm on their property. During that year, they drove their son to Southbury Training School in their personal automobile because there was no other available transportation. Subsequently they agreed to drive another child in return for payments to help defray the expense. These trips took place during school days. In contrast today, S.L. Bennett Transportation owns ten school buses and several vans used solely for student transportation, operates a full-time for profit school transportation business, and services, maintains, and stores all these vehicles on its property. While it may be true that prior to zoning Bennett maintained and serviced multiple vehicles in the courtyard area of his premises; the fact is these were personal cars or farm machinery, not the mini-buses and vans now being worked on. The service and maintenance work goes on year round and especially on weekends and summer months. Pictures contained in ROR Item 13 indicate a number of buses on the Bennett premises during what appears to be the winter months.
Finally, the third point of Zachs requires the court to determine whether the present activities of Bennett have caused a substantially different effect on the neighborhood. The ZBA found there was a "substantial adverse impact on surrounding properties." (ROR Item 8.) Substantial evidence to support this finding exists in the record. For instance, Bennett testified that a mechanic works on the buses on Saturday and Sunday. (Tr. p. 62.) Neighbors confirmed that repairs were generally so limited, but pointed out that such work also took place on holidays such as Easter and Memorial Day and occurred between 6 a.m. and 9 p.m. (Tr. pp. 120-126.) Mr. Knapik testified:
 Since we have purchased the property, all we have seen is an increase in bus activity and van activity, next door. Most noise occurring on the weekends. You can't sit out on the deck without hearing, you think your microwave is going off. You hear buses backing up all the time. On weekends. Even on Memorial Day weekend it was like that.
(Tr. p. 122.)
Bennett argues that since most of the complaining neighbors bought the adjacent lots in the 1990s (after the subdivision), there has not been any change in conditions since that time. Suffice it to say, this court reads the Zachs' reference to change means not changed from 1990 to the CT Page 15114 present, but the change from the original use (i.e., pre-1958) to the present.
 C Use As of Right
Bennett also argues that the garaging and maintenance of school buses in a residential zone is permitted, as of right, because it is a governmental use pursuant to § 4.05.600 of the Newtown Zoning Regulations. This argument fails for at least two reasons. First, the garaging and repair of privately owned and operated school buses is not a governmental function or use despite the fact that the government hires or buys their services of the buses. Thus, as a weapons manufacturer who sells his product for profit only to the government could not operate a manufacturing facility in Newtown's R-2 zone, neither can Bennett operate his private school bus business there. Second, even if this is not the case, Bennett would concededly need an approved site plan which is not in existence.
For the same reasons, Bennett's contention that his operation should fall under the rubric of "Schools operated by the Town," a permitted use in a R-2 zone pursuant to Newtown Zoning Regulations § 4.05.300, must fail. It is also argued that the Zoning Regulations § 7.09.120 which prohibits the parking or storage of certain heavy equipment and trucks in a residential area but not including buses within its purview, by implication, allows Bennett's operation. Bennett's counsel provided the background of the alleged intent behind the drafting of the provision, i.e., that it was not designed to prohibit the practice of allowing local citizens who operated individual school buses from parking them at their residences. (Tr. pp. 6-7.) However, there is no evidence that the intent of the omission was meant to cover situations such as Bennett's multi-vehicle operation. In addition, storage of the vehicles is only part of the issue, and the court finds no basis in the zoning regulations for permitting the maintenance and overhaul of these vehicles in a residential zone.
 V CONCLUSION
For the reasons set forth above, the appeal is denied.
Adams, J.